# WESTERN UNION TELEGRAPH CO. *v.* PENNSYLVANIA.

No. 15. Argued October 12, 1961.—
Decided December 4, 1961.

*John G. Buchanan, Jr.* argued the cause for appellant. With him on the briefs were *John G. Buchanan* and *John H. Waters.*

*A. Jere Creskoff* argued the cause for appellee. With him on the brief were *David Stahl,* Attorney General of Pennsylvania, and *Jack M. Cohen,* Deputy Attorney General.

*Ruth Kessler Toch,* Assistant Solicitor General of New York, argued the cause for the State of New York, as *amicus curiae,* urging reversal. With her on the brief were *Louis J. Lefkowitz,* Attorney General, and *Paxton Blair,* Solicitor General.

MR. JUSTICE BLACK delivered the opinion of the Court.

Pennsylvania law provides that "any real or personal property within or subject to the control of this Commonwealth . . . shall escheat to the Commonwealth" whenever it "shall be without a rightful or lawful owner," "remain unclaimed for the period of seven successive years" or "the whereabouts of such owner . . . shall be and remain unknown for the period of seven successive years." [1] These proceedings were begun under that law in a Pennsylvania state court to escheat certain obligations of the Western Union Telegraph Company—alleged to be "property within" Pennsylvania—to pay sums of money owing to various people who had left the monies unclaimed for more than seven years and whose whereabouts were unknown. The facts were stipulated.

Western Union is a corporation chartered under New York law with its principal place of business in that State. It also does business and has offices in all the other States except Alaska and Hawaii, in the District of Columbia, and in foreign countries, and was from 1916 to 1934 subject to regulation by the I. C. C. and since then by the F. C. C. In addition to sending telegraphic messages throughout its world-wide system, it carries on a telegraphic money order business which commonly works like this. A sender goes to a Western Union office, fills out an application and gives it to the company clerk who waits on him together with the money to be sent and the charges for sending it. A receipt is given the sender and a telegraph message is transmitted to the company's office nearest to the payee directing that office to pay the money order to the payee. The payee is then notified and upon properly identifying himself is given a negotiable draft, which he can either endorse and cash at once or keep for use in the future. If the payee cannot be located for

---

[1] Act of July 29, 1953, P. L. 986, § 1 (27 Purdon's Statutes § 333).

delivery of the notice, or fails to call for the draft within 72 hours, the office of destination notifies the sending office. This office then notifies the original sender of the failure to deliver and makes a refund, as it makes payments to payees, by way of a negotiable draft which may be either cashed immediately or kept for use in the future.

In the thousands of money order transactions carried on by the company, it sometimes happens that it can neither make payment to the payee nor make a refund to the sender. Similarly payees and senders who accept drafts as payment or refund sometimes fail to cash them. For this reason large sums of money due from Western Union for undelivered money orders and unpaid drafts accumulate over the years in the company's offices and bank accounts throughout the country. It is an accumulation of this kind that Pennsylvania seeks to escheat here—specifically, the amount of undisbursed money held by Western Union arising out of money orders bought in Pennsylvania offices to be transmitted to payees in Pennsylvania and other States, chiefly other States.

Western Union, while not claiming these monies for itself, challenged Pennsylvania's right to take ownership of them for itself.[2] Among other grounds the company urged that a judgment of escheat for Pennsylvania in its courts would not protect the company from multiple liability either in Pennsylvania or in other States. Its argument in this respect was that senders of money orders and holders of drafts would not be bound by the Pennsylvania judgment because the service by publication did not, for two reasons, give the state court jurisdiction: (1) that under the doctrine of *Pennoyer* v. *Neff*, 95 U. S. 714, the presence of property, called a "res," within the State is a prerequisite for service by publication and that these obligations did not constitute such property within Penn-

---

[2] In its answer Western Union did claim these monies, but it has since abandoned this ground.

sylvania, and (2) that the notice by publication given in this case did not give sufficient information or afford sufficient likelihood of actual notice to meet due process requirements. In addition, Western Union urged that there might be escheats claimed by other States which would not be bound by the Pennsylvania judgment because they were not and could not be made parties to this Pennsylvania proceeding. Western Union's apprehensions that other States might later escheat the same funds were buttressed by the Pennsylvania court's finding that New York had already seized and escheated a part of the very funds here claimed by Pennsylvania. With reference to this the Pennsylvania Court of Common Pleas said: "We take this opportunity of stating that we do not recognize New York's authority to escheat that money, but since it has been done we have no jurisdiction over this sum." 73 Dauphin County Rep. 160, 173. Both the Pennsylvania trial court and the State Supreme Court rejected the contentions of Western Union and declared the unclaimed obligations escheated. 73 Dauphin County Rep. 160; 74 Dauphin County Rep. 49; 400 Pa. 337, 162 A. 2d 617. Since the record showed substantial questions as to the jurisdiction of the Pennsylvania courts over the individual owners of the unclaimed monies and as to the power of the State of Pennsylvania to enter a binding judgment that would protect Western Union against subsequent liability to other States, we noted probable jurisdiction. 365 U. S. 801.

We find it unnecessary to decide any of Western Union's contentions as to the adequacy of notice to and validity of service on the individual claimants by publication. For as we view these proceedings, there is a far more important question raised by this record—whether Pennsylvania had power at all to render a judgment of escheat which would bar New York or any other State from escheating this same property.

Pennsylvania does not claim and could not claim that the same debts or demands could be escheated by two States. See *Standard Oil Co.* v. *New Jersey,* 341 U. S. 428, 443. And our prior opinions have recognized that when a state court's jurisdiction purports to be based, as here, on the presence of property within the State, the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment. *Anderson National Bank* v. *Luckett,* 321 U. S. 233, 242–243; *Security Savings Bank* v. *California,* 263 U. S. 282, 286–290. Applying that principle, there can be no doubt that Western Union has been denied due process by the Pennsylvania judgment here unless the Pennsylvania courts had power to protect Western Union from any other claim, including the claim of the State of New York that these obligations are property "within" New York and are therefore subject to escheat under its laws. But New York was not a party to this proceeding and could not have been made a party, and, of course, New York's claims could not be cut off where New York was not heard as a party. Moreover, the potential multistate claims to the "property" which is the subject of this escheat make it not unlikely that various States will claim *in rem* jurisdiction over it. Therefore, Western Union was not protected by the Pennsylvania judgment, for a state court judgment need not be given full faith and credit by other States as to parties or property not subject to the jurisdiction of the court that rendered it. *Pennoyer* v. *Neff,* 95 U. S. 714; *Riley* v. *New York Trust Co.,* 315 U. S. 343.

It is true that, on the facts there presented, this Court said in *Standard Oil Co.* v. *New Jersey,* 341 U. S. 428, 443, that "The debts or demands . . . having been taken from the appellant company by a valid judgment of New Jer-

sey, the same debts or demands against appellant [Standard Oil] cannot be taken by another state. The Full Faith and Credit Clause bars any such double escheat." But the Court went on to point out that "The claim of no other state to this property is before us and, of course, determination of any right of a claimant state against New Jersey for the property escheated by New Jersey must await presentation here." Here, unlike *Standard Oil*, there is in reality a controversy between States, possibly many of them, over the right to escheat part or all of these funds.

The claims of New York are particularly aggressive, not merely potential, but actual, active and persistent—best shown by the fact that New York has already escheated part of the very funds originally claimed by Pennsylvania. These claims of New York were presented to us in both the brief and oral argument of that State as *amicus curiae*. In presenting its claims New York also called our attention to the potential claims of other States for escheat based on their contacts with the separate phases of the multi-state transactions out of which these unclaimed funds arose, including: the State of residence of the payee, the State of the sender, the State where the money order was delivered, and the State where the fiscal agent on which the money order was drawn is located. Arguments more than merely plausible can doubtless be made to support claims of all these and other States to escheat all or parts of all unclaimed funds held by Western Union. And the large area of the company's business makes it entirely possible that *every* State may now or later claim a right to participate in these funds. But even if, as seems unlikely, no other State will assert such a claim, the active controversy between New York and Pennsylvania is enough in itself to justify Western Union's contention that to require it to pay this money to Pennsylvania before New York has had its full day in court might

force Western Union to pay a single debt more than once and thus take its property without due process of law.

Our Constitution has wisely provided a way in which controversies between States can be settled without subjecting individuals and companies affected by those controversies to a deprivation of their right to due process of law. Article III, § 2 of the Constitution gives this Court original jurisdiction of cases in which a State is a party. The situation here is in all material respects like that which caused us to take jurisdiction in *Texas* v. *Florida,* 306 U. S. 398. There four States sought to collect death taxes out of an estate. The tax depended upon the domicile of the decedent, and this Court said that "By the law of each state a decedent can have only a single domicile for purposes of death taxes . . . ." *Id.,* at 408. Thus, there was only one tax due to only one State. The estate was sufficient to pay the tax of any one State, but the total of the claims of the four States greatly exceeded the net value of the estate. For this reason, as we said, the risk of loss to the State of domicile was real and substantial, unless we exercised our jurisdiction. Under these circumstances we exercised our original jurisdiction to avoid "the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty." *Id.,* at 405. The rival state claimants here, as in *Texas* v. *Florida,* can invoke our original jurisdiction.

While we have previously decided some escheat cases where it was apparent that rival state claims were in the offing, we have not in any of them closed the door to the exercise of our jurisdiction. In *Connecticut Mutual Life Ins. Co.* v. *Moore,* 333 U. S. 541, we sustained the power of New York to take custody as a conservator of unclaimed funds due persons insured by that company through policies issued for delivery in New York to persons then resident in New York. In doing so we rejected an argument that the State of domicile of the insurance companies

involved alone had jurisdiction to escheat. But there we were careful to point out that "The problem of what another State than New York may do is not before us. That question is not passed upon." *Id.*, at 548. Even though this reservation was made and New York only took custody of the funds, leaving the way clear for all claimants to bring action to recover them at any time, there were dissents urging that a way should be then found for the conflicting claims of States to be determined. Several years later a divided Court in *Standard Oil Co.* v. *New Jersey*, 341 U. S. 428, upheld the right of New Jersey to escheat certain unclaimed shares of stock and dividends due stockholders and employees of the Standard Oil Company. In that case New Jersey's jurisdiction to escheat was rested, at least in part, on the fact that Standard Oil was a domiciliary of that State. Again, however, the Court justified its conclusion by saying as to claims of other States: "The claim of no other state to this property is before us and, of course, determination of any right of a claimant state against New Jersey for the property escheated by New Jersey must await presentation here." *Id.*, at 443. Later New York sought leave to file an original action here against New Jersey, alleging a controversy between the two States over jurisdiction to take custody of monies arising out of unclaimed travelers checks, outstanding for more than 15 years, issued by American Express Company, a joint stock company organized under New York law with its principal office in New York. Answering, New Jersey pointed out that under New York's then controlling law [3] it disclaimed any purpose to escheat property claimed for escheat by any other State. In this state of the New York law, we refused to take jurisdiction. 358 U. S. 924. By an act effective March 29, 1960,[4] New York amended its law eliminating

---

[3] McKinney's N. Y. Laws, § 1309, Abandoned Property Law.

[4] N. Y. Laws 1960, c. 307.

the disclaimer and now strongly asserts its claim to these funds under its new law.

The rapidly multiplying state escheat laws, originally applying only to land and other tangible things but recently moving into the elusive and wide-ranging field of intangible transactions have presented problems of great importance to the States and persons whose rights will be adversely affected by escheats.[5] This makes it imperative that controversies between different States over their right to escheat intangibles be settled in a forum where all the States that want to do so can present their claims for consideration and final, authoritative determination. Our Court has jurisdiction to do that. Whether and under what circumstances we will exercise our jurisdiction to hear and decide these controversies ourselves in particular cases, and whether we might under some circumstances refer them to United States District Courts, we need not now determine. Cf. *Massachusetts* v. *Mis-*

---

[5] The magnitude of the problem involved is illustrated by the fact that, since 1946, at least 20 States have enacted legislation to bring or enlarge the coverage of intangible transactions under their escheat laws. Florida, 1961; Idaho, 1961; Illinois, 1961; Kentucky, 1960; Virginia, 1960; California, 1959; New Mexico, 1959; Louisiana, 1958; Oregon, 1957; Utah, 1957; Arizona, 1956; Washington, 1955; Pennsylvania, 1953; Massachusetts, 1950; Arkansas, 1949; Connecticut, 1949; New York, 1949; Michigan, 1947; North Carolina, 1947; New Jersey, 1946. Of these, 10—Arizona, California, Florida, Idaho, Illinois, New Mexico, Oregon, Utah, Virginia, and Washington—have adopted in substance the Uniform Disposition of Unclaimed Property Act promulgated by the National Conference of Commissioners on Uniform State Laws in 1955. In addition legislation has been under consideration by other States. For discussion of this and a general description of the growing importance of these laws, see Ely, Escheats: Perils and Precautions, 15 Bus. Law. 791.

The record in this very case shows that Massachusetts is laying claim to funds of Western Union on precisely the same ground that Pennsylvania asserted here, thus bringing Massachusetts into conflict with New York's claims too.

*souri,* 308 U. S. 1, 18–20. Nor need we, at this time, attempt to decide the difficult legal questions presented when many different States claim power to escheat intangibles involved in transactions taking place in part in many States. It will be time enough to consider those complicated problems when all interested States—along with all other claimants—can be afforded a full hearing and a final, authoritative determination.[6] It is plain that Pennsylvania courts, with no power to bring other States before them, cannot give such hearings. They have not done so here; they have not attempted to do so. As a result, their judgments, which cannot, with the assurance that comes only from a full trial with all necessary parties present, protect Western Union from having to pay the same single obligation twice, cannot stand. When this situation developed, the Pennsylvania courts should have dismissed the case.

Accordingly, the judgment of the Supreme Court of Pennsylvania is reversed, and the cause is remanded to that Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Memorandum of MR. JUSTICE STEWART.

The appellant is a New York corporation with its principal office in that State. The funds representing these unpaid money orders are located there. I think only New York has power to escheat the property involved in this case. For that reason, while disagreeing with the Court's opinion, which for me creates more problems than it solves, I join in the judgment of reversal.

---

[6] In *Texas* v. *Florida,* 306 U. S. 398, 405, we held that individual claimants "whose presence is necessary or proper for the determination of the case or controversy between the states are properly made parties . . . ."