TEXAS *v.* NEW JERSEY ET AL.

No. 13, Original. Argued November 9, 1964.—
Decided February 1, 1965.

*W. O. Shultz II,* Assistant Attorney General of Texas, argued the cause for plaintiff. With him on the brief was *Waggoner Carr,* Attorney General of Texas.

*Charles J. Kehoe,* Deputy Attorney General of New Jersey, argued the cause for the State of New Jersey, defendant. With him on the brief were *Arthur J. Sills,* Attorney General of New Jersey, and *Theodore I. Botter,* First Assistant Attorney General.

*Fred M. Burns,* Assistant Attorney General of Florida, argued the cause for the State of Florida, intervenor. With him on the brief were *James W. Kynes,* Attorney General of Florida, and *Jack W. Harnett,* Assistant Attorney General.

*Joseph H. Resnick,* Assistant Attorney General of Pennsylvania, argued the cause for the State of Pennsylvania, defendant.

*Augustus S. Ballard* argued the cause for the Sun Oil Company, defendant.

*Ralph W. Oman* argued the cause for the Life Insurance Association of America, as *amicus curiae.* On the brief were *William B. McElhenny* and *Warren Elliott.*

MR. JUSTICE BLACK delivered the opinion of the Court

Invoking this Court's original jurisdiction under Art III, § 2, of the Constitution,[1] Texas brought this action against New Jersey, Pennsylvania, and the Sun Oil Company for an injunction and declaration of rights to settle a controversy as to which State has jurisdiction to take title to certain abandoned intangible personal property through escheat, a procedure with ancient origins[2] whereby a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears. The property in question here consists of various small debts totaling $26,461.65[3] which the Sun Oil Company for periods of approximately seven to 40 years prior to the bringing of this action has owed to approximately 1,730 small creditors who have never appeared to collect them. The amounts owed, most of them resulting from failure of creditors to claim or cash checks, are either evidenced on the books of Sun's two Texas offices or are owing to persons whose last known address was in Texas, or both.[4]

---

[1] "The judicial Power shall extend . . . to Controversies between two or more States . . . .

"In all Cases . . . in which a State shall be Party, the supreme Court shall have original Jurisdiction."

28 U. S. C. § 1251 (a) (1958 ed.) provides in relevant part:

"The Supreme Court shall have original and exclusive jurisdiction of:

"(1) All controversies between two or more States . . . ."

[2] See generally Enever, Bona Vacantia Under the Law of England; Note, 61 Col. L. Rev. 1319.

[3] The amount originally reported by Sun to the Treasurer of Texas was $37,853.37, but payments to owners subsequently found reduced the unclaimed amount.

[4] The debts consisted of the following:

(1) Amounts which Sun attempted to pay through its Texas offices owing to creditors some of whose last known addresses were in Texas,

Texas says that this intangible property should be treated as situated in Texas, so as to permit that State to escheat it. New Jersey claims the right to escheat the same property because Sun is incorporated in New Jersey. Pennsylvania claims power to escheat part or all of the same property on the ground that Sun's principal business offices were in that State. Sun has disclaimed any interest in the property for itself, and asks only to be protected from the possibility of double liability. Since we held in *Western Union Tel. Co.* v. *Pennsylvania*, 368 U. S. 71, that the Due Process Clause of the Fourteenth Amendment prevents more than one State from escheating a given item of property, we granted Texas leave to file this complaint against New Jersey, Pennsylvania and Sun, 371 U. S. 873, and referred the case to the Honorable Walter A. Huxman to sit as Special Master to take evi-

---

some of whose last known addresses were elsewhere, and some of whom had no last known address indicated:

(a) uncashed checks payable to employees for wages and reimbursable expenses;

(b) uncashed checks payable to suppliers for goods and services;

(c) uncashed checks payable to lessors of oil- and gas-producing land as royalty payments;

(d) unclaimed "mineral proceeds," fractional mineral interests shown as debts on the books of the Texas offices.

(2) Amounts for which various offices of Sun throughout the country attempted to make payment to creditors all of whom had last known addresses in Texas:

(a) uncashed checks payable to shareholders for dividends on common stock;

(b) unclaimed refunds of payroll deductions owing to former employees;

(c) uncashed checks payable to various small creditors for minor obligations;

(d) undelivered fractional stock certificates resulting from stock dividends.

dence and make appropriate reports, 372 U. S. 926.[5]
Florida was permitted to intervene since it claimed the
right to escheat the portion of Sun's escheatable obliga-
tions owing to persons whose last known address was in
Florida. 373 U. S. 948.[6] The Master has filed his report,
Texas and New Jersey each have filed exceptions to it,
and the case is now ready for our decision. We agree
with the Master's recommendation as to the proper
disposition of the property.

With respect to tangible property, real or personal, it
has always been the unquestioned rule in all jurisdictions
that only the State in which the property is located may
escheat. But intangible property, such as a debt which
a person is entitled to collect, is not physical matter
which can be located on a map. The creditor may live in
one State, the debtor in another, and matters may be fur-
ther complicated if, as in the case before us, the debtor
is a corporation which has connections with many States
and each creditor is a person who may have had connec-
tions with several others and whose present address is
unknown. Since the States separately are without con-
stitutional power to provide a rule to settle this interstate
controversy and since there is no applicable federal stat-
ute, it becomes our responsibility in the exercise of our
original jurisdiction to adopt a rule which will settle the
question of which State will be allowed to escheat this
intangible property.

---

[5] Texas' motion for leave to file the bill of complaint also prayed
for temporary injunctions restraining the other States and Sun from
taking steps to escheat the property. The other States voluntarily
agreed not to act pending determination of this case, and so the
motion for injunctions was denied. 370 U. S. 929.

[6] Illinois, which claims no interest in the property involved in this
case, also sought to intervene to urge that jurisdiction to escheat
should depend on the laws of the State in which the indebtedness was
created. Leave to intervene was denied. 372 U. S. 973.

Four different possible rules are urged upon us by the respective States which are parties to this case. Texas, relying on numerous recent decisions of state courts dealing with choice of law in private litigation,[7] says that the State with the most significant "contacts" with the debt should be allowed exclusive jurisdiction to escheat it, and that by that test Texas has the best claim to escheat every item of property involved here. Cf. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306; *Atkinson* v. *Superior Court*, 49 Cal. 2d 338, 316 P. 2d 960, appeals dismissed and cert. denied *sub nom. Columbia Broadcasting System, Inc.* v. *Atkinson*, 357 U. S. 569. But the rule that Texas proposes, we believe, would serve only to leave in permanent turmoil a question which should be settled once and for all by a clear rule which will govern all types of intangible obligations like these and to which all States may refer with confidence. The issue before us is not whether a defendant has had sufficient contact with a State to make him or his property rights subject to the jurisdiction of its courts, a jurisdiction which need not be exclusive. Compare *McGee* v. *International Life Ins. Co.*, 355 U. S. 220; *Mullane* v. *Central Hanover Bank & Trust Co., supra; International Shoe Co.* v. *Washington*, 326 U. S. 310.[8] Since this Court has held in *Western Union Tel. Co.* v. *Pennsylvania, supra,* that the same property cannot constitutionally be escheated

---

[7] *E. g., Schmidt* v. *Driscoll Hotel, Inc.*, 249 Minn. 376, 82 N. W. 2d 365; *Auten* v. *Auten*, 308 N. Y. 155, 124 N. E. 2d 99; *Haumschild* v. *Continental Casualty Co.*, 7 Wis. 2d 130, 95 N. W. 2d 814. See also *Clay* v. *Sun Insurance Office, Ltd.*, 377 U. S. 179; *Watson* v. *Employers Liability Assurance Corp.*, 348 U. S. 66; cf. *Richards* v. *United States*, 369 U. S. 1; *Vanston Bondholders Protective Committee* v. *Green*, 329 U. S. 156.

[8] Nor, since we are dealing only with escheat, are we concerned with the power of a state legislature to regulate activities affecting the State, power which like court jurisdiction need not be exclusive. Compare *Osborn* v. *Ozlin*, 310 U. S. 53.

by more than one State, we are faced here with the very different problem of deciding which State's claim to escheat is superior to all others. The "contacts" test as applied in this field is not really any workable test at all—it is simply a phrase suggesting that this Court should examine the circumstances surrounding each particular item of escheatable property on its own peculiar facts and then try to make a difficult, often quite subjective, decision as to which State's claim to those pennies or dollars seems stronger than another's. Under such a doctrine any State likely would easily convince itself, and hope to convince this Court, that its claim should be given priority—as is shown by Texas' argument that it has a superior claim to every single category of assets involved in this case. Some of them Texas says it should be allowed to escheat *because* the last known addresses of the creditors were in Texas, others it claims *in spite of* the fact that the last known addresses were *not* in Texas. The uncertainty of any test which would require us in effect either to decide each escheat case on the basis of its particular facts or to devise new rules of law to apply to ever-developing new categories of facts, might in the end create so much uncertainty and threaten so much expensive litigation that the States might find that they would lose more in litigation expenses than they might gain in escheats.[9]

New Jersey asks us to hold that the State with power to escheat is the domicile of the debtor—in this case New Jersey, the State of Sun's incorporation. This plan has

---

[9] Texas argues in particular that at least the part of the intangible obligations here which are royalties, rents, and mineral proceeds derived from land located in Texas should be escheatable only by that State. We do not believe that the fact that an intangible is income from real property with a fixed situs is significant enough to justify treating it as an exception to a general rule concerning escheat of intangibles.

the obvious virtues of clarity and ease of application. But it is not the only one which does, and it seems to us that in deciding a question which should be determined primarily on principles of fairness, it would too greatly exalt a minor factor to permit escheat of obligations incurred all over the country by the State in which the debtor happened to incorporate itself.

In some respects the claim of Pennsylvania, where Sun's principal offices are located, is more persuasive, since this State is probably foremost in giving the benefits of its economy and laws to the company whose business activities made the intangible property come into existence. On the other hand, these debts owed by Sun are not property to it, but rather a liability, and it would be strange to convert a liability into an asset when the State decides to escheat. Cf. *Case of the State Tax on Foreign-held Bonds,* 15 Wall. 300, 320. Moreover, application of the rule Pennsylvania suggests would raise in every case the sometimes difficult question of where a company's "main office" or "principal place of business" or whatever it might be designated is located. Similar uncertainties would result if we were to attempt in each case to determine the State in which the debt was created and allow it to escheat. Any rule leaving so much for decision on a case-by-case basis should not be adopted unless none is available which is more certain and yet still fair. We think the rule proposed by the Master, based on the one suggested by Florida, is.

The rule Florida suggests is that since a debt is property of the creditor, not of the debtor,[10] fairness among the States requires that the right and power to escheat the debt should be accorded to the State of the creditor's

---

[10] On this point Florida stresses what is essentially a variation of the old concept of *"mobilia sequuntur personam,"* according to which intangible personal property is found at the domicile of its owner. See *Blodgett* v. *Silberman,* 277 U. S. 1, 9–10.

last known address as shown by the debtor's books and records.[11] Such a solution would be in line with one group of cases dealing with intangible property for other purposes in other areas of the law.[12] Adoption of such a rule involves a factual issue simple and easy to resolve, and leaves no legal issue to be decided. It takes account of the fact that if the creditor instead of perhaps leaving behind an uncashed check had negotiated the check and left behind the cash, this State would have been the sole possible escheat claimant; in other words, the rule recognizes that the debt was an asset of the creditor. The rule recommended by the Master will tend to distribute escheats among the States in the proportion of the commercial activities of their residents. And by using a standard of last known address, rather than technical legal concepts of residence and domicile, administration and application of escheat laws should be simplified. It may well be that some addresses left by vanished creditors will be in States other than those in which they lived at the time the obligation arose or at the time of the escheat. But such situations probably will be the exception, and any errors thus created, if indeed they could be called errors, probably will tend to a large extent to cancel each other out. We therefore hold that each item of property

---

[11] We agree with the Master that since our inquiry here is not concerned with the technical domicile of the creditor, and since ease of administration is important where many small sums of money are involved, the address on the records of the debtor, which in most cases will be the only one available, should be the only relevant last-known address.

[12] See, e. g., Baldwin v. Missouri, 281 U. S. 586; Farmers Loan & Trust Co. v. Minnesota, 280 U. S. 204; Blodgett v. Silberman, 277 U. S. 1. However, it has been held that a State may allow an unpaid creditor to garnish a debt owing to his debtor wherever the person owing that debt is found. Harris v. Balk, 198 U. S. 215. But cf. New York Life Ins. Co. v. Dunlevy, 241 U. S. 518.

in question in this case is subject to escheat only by the State of the last known address of the creditor, as shown by the debtor's books and records.[13]

This leaves questions as to what is to be done with property owed persons (1) as to whom there is no record of any address at all, or (2) whose last known address is in a State which does not provide for escheat of the property owed them. The Master suggested as to the first situation—where there is no last known address—that the property be subject to escheat by the State of corporate domicile, provided that another State could later escheat upon proof that the last known address of the creditor was within its borders. Although not mentioned by the Master, the same rule could apply to the second situation mentioned above, that is, where the State of the last known address does not, at the time in question, provide for escheat of the property. In such a case the State of corporate domicile could escheat the property, subject to the right of the State of the last known address to recover it if and when its law made provision for escheat of such property. In other words, in both situations the State of corporate domicile should be allowed to cut off the claims of private persons only, retaining the property for itself only until some other State comes forward with proof that it has a superior right to escheat. Such a solution for these problems, likely to arise with comparative infrequency, seems to us conducive to needed certainty and we therefore adopt it.

[13] Cf. *Connecticut Mutual Life Ins. Co.* v. *Moore*, 333 U. S. 541. As was pointed out in *Western Union Tel. Co.* v. *Pennsylvania*, 368 U. S. 71, 77–78, none of this Court's cases allowing States to escheat intangible property decided the possible effect of conflicting claims of other States. Compare *Standard Oil Co.* v. *New Jersey*, 341 U. S. 428, 443; *Connecticut Mutual Life Ins. Co.* v. *Moore, supra; Anderson National Bank* v. *Luckett*, 321 U. S. 233; *Security Savings Bank* v. *California*, 263 U. S. 282.

We realize that this case could have been resolved otherwise, for the issue here is not controlled by statutory or constitutional provisions or by past decisions, nor is it entirely one of logic. It is fundamentally a question of ease of administration and of equity. We believe that the rule we adopt is the fairest, is easy to apply, and in the long run will be the most generally acceptable to all the States.

The parties may submit a proposed decree applying the principles announced in this opinion.

*It is so ordered.*

MR. JUSTICE STEWART, dissenting.

I adhere to the view that only the State of the debtor's incorporation has power to "escheat" intangible property when the whereabouts of the creditor are unknown. See *Western Union Tel. Co. v. Pennsylvania,* 368 U. S. 71, 80 (separate memorandum). The sovereign's power to escheat tangible property has long been recognized as extending only to the limits of its territorial jurisdiction. Intangible property has no spatial existence, but consists of an obligation owed one person by another. The power to escheat such property has traditionally been thought to be lodged in the domiciliary State of one of the parties to the obligation. In a case such as this the domicile of the creditor is by hypothesis unknown; only the domicile of the debtor is known. This Court has thrice ruled that where the creditor has disappeared, the State of the debtor's domicile may escheat the intangible property. *Standard Oil Co. v. New Jersey,* 341 U. S. 428; *Anderson Nat. Bank v. Luckett,* 321 U. S. 233; *Security Savings Bank v. California,* 263 U. S. 282. Today the Court overrules all three of those cases. I would not do so. Adherence to settled precedent seems to me far better than giving the property to the State within which is located the one place where we know the creditor is not.