Weston E. NELLIUS, State Escheator of the State of Delaware, Plaintiff,

v.

TAMPAX, INCORPORATED, a Delaware Corporation, Defendant and Counterclaimant,

v.

Weston E. NELLIUS, State Escheator of the State of Delaware, William C. Russell, Margaret Marks McClelland, Executrix of the Estate of John G. Cronin, Deceased, and John G. Serino, Special Administrator of the Estate of John G. Cronin, Deceased, Defendants by Counterclaim.

Court of Chancery of Delaware, New Castle County.

Submitted April 26, 1978.

Decided Oct. 24, 1978.

Carolyn Berger, Asst. Atty. Gen., Wilmington, for plaintiff.

Andrew B. Kirkpatrick, Jr., and William T. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Tampax, Inc.

Richard J. Abrams, of Richards, Layton & Finger, Wilmington, for defendant William C. Russell.

Thomas Herlihy, III, of Herlihy & Herlihy, Wilmington, for defendant John G. Serino, Sp. Administrator.

BROWN, Vice Chancellor.

In this action brought initially to escheat the ownership interests in certain personal property, the defendants have moved for summary judgment against the plaintiff State Escheator. The undisputed facts giving rise to this motion may be summarized as follows:

On December 22, 1971 the State Escheator filed this suit against the defendant Tampax, Incorporated, a Delaware corporation (hereafter "Tampax"). The basis for the suit was the Delaware escheat statutes as found at 12 *Del.C.* Ch. 11. The complaint alleged that Tampax was the holder of certain stock, stock dividends and cash dividends which allegedly were subject to escheat to the State of Delaware pursuant to the provisions of the aforesaid escheat statutes. The basis for this claim derives from the following extraordinary chain of events.

On December 11, 1941 Tampax issued 200 shares of its capital stock to one William C. Russell, whose address was listed on the stock records of Tampax as being in Canton, Massachusetts. The shares thus issued were represented by two stock certificates for 100 shares each. Sometime thereafter, Russell transferred these two stock certificates to a man named Cronin in exchange for certain bonds. The bonds eventually proved to be worthless. Russell was never fully aware, or at least he apparently has no current recollection, of Cronin's first name or where he lived at the time. No application to transfer the ownership of these 200 shares on the records of Tampax has ever been made. At the time of the filing of this action, as well as now, the records of Tampax still reflect William C. Russell, with a residence address in Massachusetts, to be the owner.

During the period from April 1945 to August 1946 Tampax mailed to Russell, as record owner, four separate dividend checks. Each such check was returned to Tampax by Russell with a notation advising that the dividend check did not belong to him. As to the dividend of April 9, 1945 he advised that "The enclosed check does not belong to me I sold this stock about a year ago." As to that of August 30, 1945 the notation was "The enclosed check does not belong to me I sold this stock over a year ago." As to the February 28, 1946 dividend: "I am returning check that does not belong to me please look up present owner I sold my stock about 2 years ago." And finally, as to the August 29, 1946 dividend, the rejection message read: "Please do not send me the enclosed checks as I have not owned any of this stock for about 2 years." Thereafter, Tampax made no further effort to send dividend checks to Russell. However, it continued to hold all cash dividends, stock dividends and stock split shares in his name on the books of the corporation even though it made no attempt to deliver them to him.

Over the years, as a result of stock splits and stock dividends, the original 200 shares have now swollen to a total of 7,200 shares. Certificates for these shares have been prepared in Russell's name, but they have been

physically retained by Tampax because of his express disclaimer of ownership in 1945 and 1946. In addition, Tampax holds in its possession (as of May 11, 1978) $145,072 representing cash dividends declared payable with respect to the subject shares from April 30, 1945 onward.*

Tampax has reason to believe that the "Cronin" to whom Russell transferred the two original share certificates might have been one John G. Cronin of Boston, Massachusetts. During the early 1940's this John G. Cronin had been active in seeking to acquire Tampax shares. However, John G. Cronin died on July 21, 1944 and the probate records of the Commonwealth of Massachusetts at Middlesex indicate that the 200 shares were not a part of his estate. As of the present time the whereabouts of the original stock certificates issued to Russell, or, indeed, whether they physically still exist, remain unknown.

In 1965 Tampax contacted Russell in an attempt to ascertain the correct owner of the stock and accumulated dividends. On the advice of prior counsel, Russell submitted an application for new stock certificates on the basis that his original certificates were "lost, stolen, or destroyed." Because certain information in this application (prepared by Russell's then attorney) was incorrect, Tampax refused to honor the application. There is also some indication that in 1949 the Executrix of John G. Cronin's estate had made a similar request, with a similar result.

Thus did the situation prevail on July 13, 1971 when the Delaware General Assembly enacted certain amendments to its then existing escheat laws so as to provide for the escheat of personal property and intangibles to the State. 58 *Del.L.* Ch. 275. In December 1971 the plaintiff State Escheator filed this action against Tampax claiming the right to escheat the aforesaid stock and accumulated cash dividends. Tampax resisted the complaint and, in addition, interpleaded both Russell and, eventually, one John G. Serino, a Special Administrator appointed for the Estate of John G. Cronin, deceased. Russell and Serino filed answers in which they also denied that the property was subject to escheat by the State of Delaware. Each counterclaimed against Tampax claiming ownership of the stock and dividends, and each cross-claimed against the other. Subsequently, Russell and Serino moved for summary judgment against the State Escheator. Tampax has also joined in this motion.

In support of their motion, the defendants argue, among other things, that the suit is not authorized under the literal language of the escheat statutes as amended, and also that the suit is invalid by reason of the State Escheator's failure to provide notice as required by due process of law. However, I find it unnecessary to consider these arguments because I am convinced that the defendants are correct on their initial contention that the State Escheator lacks standing to maintain the action under the guidelines for escheat established by the United States Supreme Court in *Texas v. New Jersey,* 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965).

In its earlier decision in *Western Union Tel. Co. v. Pennsylvania,* 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961) the Supreme Court held that the Due Process Clause of the Fourteenth Amendment prevents more than one State from escheating a given item of property. In *Texas v. New Jersey* it addressed the question of which state would have priority in escheating abandoned intangible personal property. It considered the State of the debtor's incorporation, the State where the documents or evidence of debt were physically located, the State of the holder's principal place of business as well as the State of last known address of the record owner. Acknowledging that the case could have been resolved otherwise, the Court concluded as follows at 379 U.S. 681, 85 S.Ct. 631, 13 L.Ed.2d 601:

> "We therefore hold that each item of property in question in this case is subject to escheat only by the State of the last known address of the creditor, as shown by the debtor's books and records."

* The total value of the accumulated stock and dividends as of May 11, 1978 was $452,872.

The Court went on to hold that where the property is owed to persons "as to whom there is no record of any address at all" or whose address is in a State which does not provide for the escheat of such property, then in such case the State of corporate domicile of the debtor would be the one entitled to escheat the property, subject in the latter situation, however, to the right of the State of the last known address of the creditor to recover it if and when its law made provision for such an escheat.

These rules of primacy were said to be premised upon "ease of administration" in view of the fact that it would be grossly impractical and needlessly costly to the litigating States for the Supreme Court of the United States to determine escheat questions between competing States on a case-by-case basis. Subsequently, the Supreme Court reemphasized its position in the case of *Pennsylvania v. New York,* 407 U.S. 206, 210, 92 S.Ct. 2075, 2078, 32 L.Ed.2d 693, 698 (1972) wherein it summarized its *Texas v. New Jersey* ruling as follows:

> "We therefore held that the State of the creditor's last known address is entitled to escheat the property owed him, adding that if his address does not appear on the debtor's books or is in a State that does not provide for escheat of intangibles, then the State of the debtor's incorporation may take custody of the funds 'until some other State comes forward with proof that it has a superior right to escheat.'"

In attempting to apply these rules to the case at hand, we have the following situation.** As shown by the debtor's [Tampax] books and records, Russell is the creditor and his last known address is in Massachusetts. However, Russell had notified Tampax 25 years prior to the filing of the suit that he was no longer the owner of the stock. Since Russell is uncertain as to the identity of the person to whom he turned over his original stock certificates and since no one has sought to transfer ownership on

** Massachusetts has abandoned property escheat statutes. *Annotated Laws of Massachusetts,* Ch. 200A. Thus the State of the debtor's incorporation would come into play here only if

the records of the corporation during the same 25 year period, the State Escheator takes the position that the books and records of Tampax do not reflect the identity of the last known owner and that consequently, as to the *actual* last known owner of the original 200 shares (in the words of *Texas v. New Jersey*) "there is no record of any address at all." Where the books and records of the debtor thus reflect no address for the creditor, the argument continues, the rule of *Texas v. New Jersey* provides that the property may be escheated by the State of the debtor's incorporation—in this case, Delaware.

But while this argument has commendable logic on its side, I think it must fail, at least as I understand the position adopted by the United States Supreme Court. In the first place, the rule of *Texas v. New Jersey* was never put forth as being logically defensible in every respect. As was stated by the Court at 379 U.S. 683, 85 S.Ct. 631, 13 L.Ed.2d 602:

> "We realize that this case could have been resolved otherwise, for the issue here is not controlled by statutory or constitutional provisions or by past decision, nor is it entirely one of logic. It is fundamentally a question of ease of administration and of equity. We believe that the rule we adopt is the fairest, is easy to apply, and in the long run will be the most generally acceptable to all the States."

Thus it was reasoned that although in some instances the result brought about by the application of the primacy rules there adopted might not appear entirely logical when contrasted with an alternative result, the certainty and ease of administration that they would provide was an overriding factor and, in addition, matters would probably balance out between the States in the long run. Compare the observations of the dissenting minority in *Pennsylvania v. New York, supra.*

there is no last known address for the creditor as shown on the records of the debtor corporation.

Secondly, so as to establish the desired certainty among the States and to facilitate ease of administration, priority was given to the State of the last known address of the creditor "as shown by the debtor's books and records." 379 U.S. 681, 85 S.Ct. 631, 13 L.Ed.2d 601. The thought of evaluating each potential case on the basis of all available evidence was dispelled as being unworkable in the context of litigation between States wherein the Supreme Court of the United States would have exclusive jurisdiction. Yet the position taken by the State Escheator here, while perhaps logical, is one which of necessity must resort to evidence beyond the debtor's books and records in order to be sustained.

Viewed hypothetically, if the issue here was between Massachusetts and Delaware as to which of them had the prior right to escheat the stock and accumulated dividends, Delaware would have to prove those very evidentiary elements on which the State Escheator is relying here in his effort to defeat the motion for summary judgment, namely, Russell's rejection of the various dividend checks in 1945 and 1946, Russell's deposition testimony as to what he did and what he recollected, the certified copies of the probate records of John G. Cronin's estate, etc. In other words, it would be Delaware's burden to establish by sufficient evidence that the last *actual* owner of the stock was a person, known or unknown, other than the owner shown of record on the stock ledger of Tampax. This appears to be the type of situation that the rationale behind the primacy rules of *Texas v. New Jersey* sought to avoid.

As a further persuasion that the lack of knowledge as to the whereabouts of the last actual owner of intangible property should not, under the present circumstances, overcome the announced preference for the last known address of the creditor of record, I make reference to the dissent of Justice Stewart in *Texas v. New Jersey supra.* At 379 U.S. 683, 85 S.Ct. 631, 13 L.Ed.2d 602, he observed as follows:

"Intangible property has no spatial existence, but consists of an obligation owed one person by another. The power to escheat such property has traditionally been thought to be lodged in the domiciliary State of one of the parties to the obligation. In a case such as this *the domicile of the creditor is by hypothesis unknown;* only the domicile of the debtor is known. This Court has thrice ruled that *where the creditor has disappeared,* the State of the debtor's domicile may escheat the intangible property. *Standard Oil Co. v. New Jersey,* 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078; *Anderson Nat. Banks v. Luckett,* 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692; *Security Savings Bank v. People of State of California,* 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301. Today the Court overrules all three of those cases. I would not do so." (Emphasis added.)

Based upon the foregoing, I am forced to conclude that the existence of Russell's name and his Massachusetts address on the records of Tampax bars the State of Delaware from bringing this action to escheat the stock and accumulated dividends in issue despite the State Escheator's contention, based upon the status of Tampax as a Delaware corporation, that the address of the last *actual* owner of the original two stock certificates is unknown, or at least is not reflected on the books and records of the debtor corporation. The defendants' motion for summary judgment will be granted.

I hasten to add, however, that this should in no way be construed as either a decision or an insinuation that Massachusetts has a present right to escheat the property. Ongoing litigation will hereafter remain in this Court between Tampax, Russell and the Special Administrator of Cronin's Estate concerning ownership rights to the property. There is also an argument that no period of dormancy has run such as would justify an escheat by any State. This decision simply holds that the Delaware State Escheator has no present standing to claim the property under the Delaware escheat statutes, and that as a consequence his present claims must be removed from the case.

Order on notice.