**COURT OF CHANCERY**
**OF THE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone:  (302) 739-4397
Facsimile:  (302) 739-6179

Date Submitted: March 10, 2020
Date Decided: May 21, 2020

Caroline Lee Cross, Esquire
Elizabeth R. McFarlan, Esquire
Delaware Department of Justice
820 North French Street
Wilmington, DE  19801

Melanie K. Sharp, Esquire
Martin S. Lessner, Esquire
Mary F. Dugan, Esquire
Michael A. Laukaitis, II, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE  19801

Michael P. Kelly, Esquire
David A. White Esquire
Matthew J. Rifino, Esquire
McCarter & English LLP
405 North King Street, Suite 800
Wilmington, DE  10801

Re:  *State of Delaware, Department of Finance v. Univar, Inc.*
C.A. No. 2018-0884-JRS

Dear Counsel:

Plaintiff, the Delaware Department of Finance (the "Department" or the "State"), has statutory authority to audit Delaware corporations to assess their compliance with Delaware's unclaimed property law.  Defendant, Univar, Inc.

("Univar"), received a notice of examination regarding unclaimed property from Brenda Mayrack, the State Escheator, in 2015. It has declined to comply with the examination, igniting litigation in this Court and the United States District Court for the District of Delaware (the "District Court"). The proceedings in this Court concern the State's attempt to enforce an administrative subpoena compelling Univar to produce certain corporate books and records.

Univar has moved to dismiss, arguing this case is not ripe for adjudication because the State has failed to satisfy the statutory prerequisites for enforcing a subpoena. The State responds that, to the extent there are such prerequisites, they have been satisfied and this case is ripe for adjudication. After carefully weighing the parties' arguments, I am convinced Univar has not met its burden of demonstrating, as a matter of law, that the claims asserted here are not ripe. Its Motion to Dismiss, therefore, must be denied.

## I. BACKGROUND

I have drawn the facts from the well-pled allegations in the Complaint and documents incorporated by reference or integral to the Complaint.[1] "Any additional facts [discussed here] are either not subject to reasonable dispute or subject to judicial notice."[2]

### A. The Parties and Relevant Non-Parties

Plaintiff, the Department, is charged with enforcing Delaware's unclaimed property law.[3] Brenda Mayrack, the State Escheator, performs her function as a representative of the Department.

---

[1] Citations to the Complaint are to "Compl. ¶ ___." *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint). I also take judicial notice of the court record in companion litigation pending in the United States District Court for the District of Delaware (*Univar, Inc. v. Geisenberger*, C.A. No. 1:18 Civ. 01909). *See Frank v. Wilson*, 32 A.2d 277, 280 (Del. 1943) (taking judicial notice of court record in companion litigation when addressing a motion to dismiss); *Orloff v. Shulman*, 2005 WL 3272355, at *12 (Del. Ch. Nov. 23, 2005) (same).

[2] *Cedarview Opportunities Master Fund, L.P. v. Spanish Broadcasting Sys., Inc.*, 2018 WL 4057012, at *1 (Del. Ch. Aug. 27, 2018).

[3] Compl. ¶ 3; 12 *Del. C.* § 1102. In this Opinion, I use "escheat law" and "unclaimed properly law" interchangeably.

Defendant, Univar, is a Delaware corporation.[4]  It received a notice of an unclaimed property examination from the State on December 11, 2015.[5]

## B.  The Escheat Law

Delaware's escheat law allows the State to acquire title to abandoned property if, after the statutory waiting period, no rightful owner appears.[6]  Until the property is claimed, the State may (and does) use the funds in its operating budget.[7]  Large sections of Delaware's escheat law were struck down as unconstitutional by court order in 2016 (the "Old Law").[8]  Apparently in response to the *Temple-Inland, Inc.* decision, the escheat law was substantively amended in 2017 (the "New Law").[9]

---

[4] Compl. ¶ 1.

[5] Compl. ¶ 9.

[6] *See* 12 *Del. C.* §§ 1130, *et seq.*  This property often takes the form of bank accounts, stocks or unused gift cards.

[7] *See Univar, Inc. v. Geisenberger*, 409 F. Supp. 3d 273, 276 (D. Del. 2019).

[8] *See Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527 (D. Del. 2016).

[9] *See* 8 *Del. C.* §§ 1101, *et seq.*

Delaware's recovery of unclaimed property is facilitated by the priority rules set forth by the United States Supreme Court in *Texas v. New Jersey*.[10] There, the court explained that only one state may escheat unclaimed property.[11] The first priority goes to the state of the owner's last known address.[12] When, as often is the case, that address is unknown, the second priority, in the entity context, goes to the state where the holder is incorporated.[13] Because so many business organizations call Delaware home, our state often has priority to escheat unclaimed property held by those entities.[14]

As an entity incorporated in Delaware, Univar is a potential holder of unclaimed property under the New Law.[15] As such, the New Law, like the Old Law, authorizes the State Escheator to "[e]xamine the records of a person or the records

---

[10] 379 U.S. 674 (1965).

[11] *Id.* at 677.

[12] *Id.* at 681–82.

[13] *Id.* at 682.

[14] Federal Complaint ¶ 20.

[15] Compl. ¶ 2; 12 *Del. C.* § 1130(9).

in the possession of an agent, representative, subsidiary, or affiliate of the person under examination in order to determine whether the person complied with [the Escheat Law]."[16]  Delaware utilizes an agent, Kelmar Associates LLC ("Kelmar"), to perform audits to investigate whether entities are complying with Delaware law.[17]  As a part of this auditing procedure, the New Law, unlike the Old Law, authorizes the State to issue administrative subpoenas that can direct a company to turn over corporate books and records to Kelmar.[18]

### C. Procedural History

As noted, the State sent an examination notice to Univar in late 2015.[19] Kelmar sent its first document request to Univar on September 23, 2016.[20]  Since

---

[16] Compl. ¶ 4 (quoting 12 *Del. C.* § 1171(1)).

[17] Compl. ¶ 10.

[18] Compl. ¶¶ 6, 10.

[19] Compl. ¶ 9.

[20] Compl. ¶ 10.

then, Univar has declined to cooperate with the State's audit and has refused to produce any documents in response to Kelmar's requests.[21]

On October 30, 2018, the State issued an administrative subpoena, pursuant to 12 *Del. C.* § 1171(3), directing Univar to provide responsive documents by December 3, 2018.[22] Again, Univar did not comply and, instead, filed an action in the District Court challenging the New Law's constitutionality.[23]

The State responded by filing its Complaint in this Court seeking a summary order enforcing its subpoena. Specifically, the Complaint seeks an Order under 12 *Del. C.* § 1171(4) requiring Univar to comply with the State's administrative subpoena.[24]

---

[21] Compl. ¶ 11.

[22] Compl. ¶ 13.

[23] Compl. ¶ 14; *see Univar*, 409 F. Supp. 3d at 273.

[24] Compl. ¶ 7. *See* 12 *Del. C.* § 1171(4) ("The State Escheator . . . may . . . [b]ring an action in the Court of Chancery seeking enforcement of an administrative subpoena issued under paragraph (3) of this section, which the Court shall consider under procedures that will lead to an expeditious resolution of the action.").

Defendant moved to dismiss or stay this action on January 11, 2019, in favor of the first-filed federal action.[25] On April 8, 2019, this Court granted the motion to stay upon concluding that the statute granting the State subpoena power, at issue in this litigation, was among the statutory provisions Univar was challenging as unconstitutional in the first-filed federal action.[26] On September 17, 2019, the District Court granted in part and denied in part the State's Motion to Dismiss.[27] In doing so, the court determined that Univar had stated a claim that the State has violated its due process and equal protection rights.[28] The court also held many of Univar's claims were not ripe, and stayed that case while this Court decides whether to enforce the State's subpoena as a matter of Delaware law.[29]

---

[25] D.I. 6.

[26] D.I 32; *State of Del., Dep't. of Fin. v. Univar, Inc.*, C.A. No. 2018-0884-JRS (Del. Ch. Apr. 8, 2019) (TRANSCRIPT) (D.I. 35).

[27] *Univar*, 409 F. Supp. 3d at 273.

[28] *Id.* at 282–84.

[29] *Id.* at 284–85.

Univar has now moved to dismiss this action, arguing the State's claim is not ripe for adjudication because the State has failed to comply with the statutory prerequisites for issuing a subpoena.[30] It also argues it has preserved all constitutional arguments that are properly before the District Court, and that this Court need not address any constitutional issues when deciding the State's entitlement to enforce its subpoena.[31]

## II. ANALYSIS

"Ripeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction."[32] "Courts in [Delaware] decline to exercise jurisdiction over cases in which a controversy has not yet matured to a point where judicial action is

---

[30] Opening Br. in Supp. of Def. Univar's Mot. to Dismiss ("OB") 2.

[31] Reply Br. in Supp. of Def. Univar's Mot. to Dismiss ("RB") 16–22.

[32] *Bebchuck v. CA, Inc.*, 902 A.2d 737, 740 (Del. Ch. 2006).

appropriate."[33]  This measured approach both preserves limited judicial resources

and ensures an orderly development of the law.[34]

At oral argument, Univar made clear that its ripeness defense is predicated on

two points.  First, it argues the State has not adequately demonstrated its compliance

with the New Law's confidentiality provisions, a necessary prerequisite to any

audit.[35]  Second, it argues the State has not promulgated sufficient regulations to

manage multistate audits fairly, as required by the New Law.[36]  Separately, the

---

[33] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1988).

[34] *Id.*

[35] Oral Arg. on Def.'s Mot. to Dismiss ("OA")13; OB 16–20.

[36] OA 13; OB 20–23.  While Defendant argued in its briefs that this action was unripe because the State has not made a determination whether the Old Law or New Law applies, it candidly acknowledged at oral argument that the State has made that determination and has communicated as much to Univar within the body of the subpoena at issue here. OA 13, 17.  Univar also argued in its opening brief that this Court would have no power to enforce its order with respect to the subpoena, rendering any decision on the State's claim here an advisory opinion.  OB 25–28.  It appeared to back off that argument in its reply brief and at oral argument.  OA 19.  In any event, I am satisfied that nothing about the New Law in any way restricts this Court's inherent contempt power.  *See DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (Del. 1996) ("Courts have 'an inherent contempt authority, . . . as a power necessary to the exercise of others.'") (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (U.S. 1994)).  If the Court were to order Univar to respond to the State's subpoena, and Univar were to refuse to comply with that order, the Court would have several coercive options at its disposal to compel compliance.

parties dispute whether Univar has preserved, and may present to the District Court, its constitutional arguments with respect to the subpoena under *England v. Louisiana State Board of Medical Examiners*.[37]  I address each argument below.

### A. This Action is Ripe for Adjudication

As noted, Univar maintains this action is not ripe because the State has not demonstrated its compliance with the New Law's confidentiality requirements for multistate audits.[38]  In this regard, Univar maintains that the audit being conducted by the State is a multistate audit, notwithstanding the State's insistence that it is conducting a "Delaware-only" audit.[39]  Univar then argues that, because the public records laws of the other states participating in this supposed multistate audit materially conflict with the confidentiality requirements of the New Law, this action will not be ripe for decision until the State demonstrates its full compliance with Delaware's confidentiality requirements.[40]

---

[37] 375 U.S. 411 (1964) (addressing constitutional abstention).

[38] OA 8; 12 *Del. C.* §§ 1181, 1189.

[39] OB 16–20; RB 12–16.

[40] OB 16–20; 12 *Del. C.* § 1189.

I am not persuaded. First, there is no basis to conclude as a matter of undisputed fact that the State is conducting a multistate audit.[41] More to the point, even if the State were conducting a multistate audit, Kelmar is bound by Delaware law not to share any of Univar's confidential information with "any person who is not a current officer or employee of [Delaware]. . . ."[42] This Court has the authority, backed by its inherent contempt powers, to order that any books and records Univar produces in response to the subpoena be subject to a confidentiality order that complies with (and imposes) Delaware law.[43] Such an order could include, for example, a provision prohibiting the Kelmar auditors who receive Univar's information pursuant to the Delaware subpoena from sharing that information with others, including other Kelmar auditors.

---

[41] AB, Ex. A.

[42] 12 *Del. C.* § 1189(a). Violation of the New Law's confidentiality provisions is a misdemeanor, with the Superior Court having "exclusive original jurisdiction over such misdemeanor." 12 *Del. C.* § 1189(d).

[43] *See generally Hallett v. Carnet Hldg. Corp.*, 809 A.2d 1159, 1162 (Del. 2002) (noting that the court has inherent authority to enter appropriate confidentiality orders); *In re Trust for Gore*, 2011 WL 13175994, at *1 (Del. Ch. Dec. 22, 2010) (same).

Univar next argues that the State has failed to demonstrate it has promulgated regulations that will allow it to ensure that the New Law is being enforced as intended.[44] Here again, I disagree. Section 1172 of the New Law empowers the Department of Finance to promulgate regulations.[45] The State has written a number of rules and regulations pursuant to that statutory grant of rule-making authority.[46] Nothing in the New Law, however, sets some qualitative or quantitative regulatory threshold against which the State's authority to enforce its administrative subpoenas should be measured. While Univar may not like the number or content of regulations that have been promulgated, that does not mean this case is unripe. Any gap that might exist in the regulations can easily be filled by the well-developed common law standards in Delaware for enforcing subpoenas.[47] When the question of the subpoena's enforceability is called, this Court can and will look to that body of law.

---

[44] OB 20.

[45] 12 *Del. C.* § 1172(e).

[46] *See* OB, Ex. A.

[47] The parties have not pointed to any Delaware authority that provides guidance on the standards for enforceability of a subpoena specifically under the unclaimed property law. But there is abundant authority with respect to the parameters for enforcement of administrative subpoenas generally. *See, e.g.*, *State v. Salasky*, 2013 WL 5487363, at *14–

### B. The District Court Should Decide Any Issues Concerning Abstention Doctrines

The State argues that, having moved to dismiss this action, Univar should be forced, here and now, to litigate the facial challenges it has mounted to the New Law, and its failure to do so in its Motion should result in a declaration from this Court that those challenges have been waived.[48] The State acknowledges that it would then take that declaration to the District Court, drop it in on the district judge's proverbial lap and argue—presumably with the intent to suggest issue or claim preclusion—that the abstention issues have already been decided.[49] For its part, Univar denies it has raised a facial challenge to the statute in the current action, and

---

15 (Del. Super. Sept. 26, 2013) (discussing the Attorney General's statutory subpoena power under 29 *Del. C.* §§ 2505(4), 2508(a)); *U.S. v. Powell*, 379 U.S. 48, 57–58 (1964) (Finding an administrative subpoena is enforceable when "the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [agency's] possession, and that the administrative steps required by the [law] have been followed . . . .").

[48] AB 33–38; OA 32.

[49] OA 32.

maintains that all constitutional issues were properly presented to, and preserved for argument in, the District Court.[50]

Given that a ruling by this Court that the subpoena was not enforceable as a matter of Delaware law would moot certain claims in the federal action, the District Court understandably deemed it appropriate to stay that case pending adjudication of this case.[51] In doing so, the District Court acknowledged that asking this Court to rule on the subpoena's enforceability before addressing Univar's constitutional claims would bring "certain abstention doctrines [] into play."[52] The District Court further noted "that according to Supreme Court precedent certain issues may be preserved for adjudication in federal courts if those issues are explicitly noted and deliberately avoided during state court litigation."[53]

Nothing in the District Court's opinion suggests the court there intended that this Court would adjudicate whether either party has properly preserved its

---

[50] RB 16–21; OA 45–51.

[51] *Univar*, 409 F. Supp. 3d at 284.

[52] *Id.* at 285.

[53] *Id.* at 285 n.5 (citing *England*, 375 U.S. at 420).

constitutional arguments under *England*, much less that this Court would actually decide constitutional issues that are clearly at the heart of the federal litigation. Indeed, the State has pointed to no authority where a Delaware state court took it upon itself to decide whether a party had preserved constitutional arguments for presentation in a federal court. In my view, that decision is properly left to the District Court.[54] My reading of the District Court's opinion is that the presiding judge there shares that view.[55]

*\* \* \* \* \**

Having determined that the State has stated a justiciable claim for enforcement of its subpoena under the New Law, the next step is to present the claim for decision

---

[54] *See Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 183 (2d Cir. 1991) (federal court ruling that a plaintiff was precluded from asserting its federal claims); *Lupin Pharm., Inc. v. Richards*, 2015 WL 4068818, at \*4 (D. Md. July 2, 2015) (federal court determining it should abstain).

[55] *Univar*, 409 F. Supp. 3d at 285. This is not to say that Univar will be prohibited from making arguments that narrowly implicate constitutional considerations when addressing, on the merits, whether the State's administrative subpoena is enforceable. *See In re Blue Hen Country Network, Inc.*, 314 A.2d 197, 200 (Del. Super. 1973) (noting that the State's subpoena must comply with the Fourth Amendment).

on the merits promptly.  With this in mind, the parties shall confer and submit a joint

or, if they cannot agree, separate proposed case scheduling order(s) within the next

ten (10) days.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*