**UNITED STATES of America ex rel. Clint MCCREADY, M.D., Plaintiff,**

**v.**

**COLUMBIA/HCA HEALTHCARE CORP., et al., Defendants.**

**Nos. 00CV1846(RCL), 01MS50(RCL).**

United States District Court, District of Columbia.

March 7, 2003.

Jamie Ann Yavelberg, U.S. Department of Justice Civil Division, Washington, DC, for U.S.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on defendant Milestone Healthcare's (Milestone) motion to dismiss Relator's First Amended Complaint [239], the United States' statement of interest [273], Relators' response [ ], and Milestone's reply [299]. Upon consideration of the case, the parties' motions and responses, and the

law, Milestone's motion to dismiss will be denied.

## I. Background

This case is part of the multi-district litigation of False Claims Act *qui tam* suits against HCA and various related entities. Relator alleges that the defendants-Columbia North Monroe Hospital (owned and operated by HCA), Milestone Healthcare (a management company), and unknown Does-manipulated patient stays to maximize reimbursement. Most hospital services are reimbursed on the basis of diagnostic codes. A patient's illness is assigned a diagnostic code (DRG), and the hospital receives a predetermined Medicare payment for treating the patient based on the average cost of treating that illness, regardless of the patient's length of stay or actual treatment cost. Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1999 Rates, 63 Fed.Reg. 40,954, 40,955 (July 31, 1998) (codified at C.F.R. parts 405, 412, and 413). However, for about 10 DRGs, the reimbursement is made on a per diem basis, up to a maximum for that DRG. *Id.* at 40,974–75; 42 C.F.R. § 412.4(c),(f)(1). The per diem amount is based on a geometric mean length of stay, derived from the average patient stay for that DRG. If the patient remains in the hospital for the entire geometric mean length of stay, the hospital receives the maximum reimbursement. Relator alleges that defendants acted to keep patients in hospital care at North Monroe until they had reached the geometric mean length of stay, regardless of the medical suitability of that course of treatment. Milestone manages a rehabilitation center, to which Relator alleges patients were transferred after they had reached their length of stay, and Relator alleges that Milestone employees participated in the scheme to retain patients at the hospital. Milestone is exempt from the DRG system, and is reimbursed on a cost-basis for the rehabilitation services it provides. 63 Fed.Reg. at 40,954. Its reimbursement is not affected by the hospital's reimbursement. *Id.* at 40,983.

## II. Discussion

### A. Pleading Fraud with Particularity

#### 1. Legal Standard

 Milestone urges that Relator's First Amended Complaint fails to plead fraud with particularity, thus failing to satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) requires the circumstances constituting fraud to be stated with particularity, and applies to FCA actions. *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1383 (D.C.Cir. 1981). The main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the charges against them to prepare a defense. *Harrison, U.S. v. Westinghouse Savannah River Co.,* 176 F.3d 776 (4th Cir.1999) counsels: "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* at 784. Furthermore, Rule 9(b) is mitigated by Rule 8's short and plain statement language, and the simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b) particularity. *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385–86 (D.C.Cir.1981).

The D.C. Circuit addressed how Rule 9(b) applies to *qui tam* cases in *United States ex rel. Totten v. Bombardier Corp.,* 286 F.3d 542, 551–52 (D.C.Cir.2002). The court noted that under 9(b) the circumstances that must be pleaded with specific-

ity include " 'time, place, and contents of the false representations.' " *Id.* at 552 (citations and emphasis omitted). The relator in that case had alleged only that non-conforming goods had been delivered, not that the defendants had made false claims as a result of that delivery. *Id.* at 551. The court ruled that the relator "must set forth an adequate factual basis for his allegations that the Contractors submitted false claims ..., including a more detailed description of the specific falsehoods that are the basis for his suit." *Id.* at 552. Thus, Relator's complaint must describe in detail the specific falsehoods on which he is basing this action.

2. Relator's Complaint

■ Relators' complaint describes a scheme of retaining patients in hospital care beyond the time in which they should have been transferred to rehabilitative care. Patients received acute medical care at North Monroe, and were transferred to the rehab unit for physical therapy. Milestone was paid a management fee by HCA for services provided in the rehab unit. First Amend. Compl. ¶ 24. Relator alleges that "[b]y failing or refusing to transfer a patient ... until after the patient had reached the geometric mean (Average Length of Stay), regardless of the patient's ability to be transferred to such a unit, a hospital would receive more reimbursement than it is actually entitled to receive." *Id.* ¶ 17. The complaint alleges that Relator, who was employed as the medical director of the Milestone rehab unit, was instructed by hospital personnel not to transfer patients to the rehab unit until the geometric mean average length of stay had been reached, and names specific patients to whom this scheme was applied. *Id.* ¶¶ 19–21. This system was practiced and enforced by both North Monroe and Milestone employees. *Id.* ¶ 22. As a result of these extended hospital stays, cost reports and reimbursement claims to

Medicare contained inflated costs. *Id.* ¶¶ 25–26. Relator indicates that this practice was widespread in the HCA system. *Id.* ¶¶ 22, 28.

These allegations meet the standard of pleading fraud with particularity. The complaint amply prepares defendants to meet the allegations contained in them. Rule 9(b) is mitigated by Rule 8's short and plain statement language, and the simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b) particularity. *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385–86 (D.C.Cir. 1981). Relators are required to set out the details of the specific scheme and its falsehoods, as well as supply the time, place, and content of false representations, and link that scheme to claims for payment made to the United States. *United States ex rel. Totten v. Bombardier Corp.,* 286 F.3d 542, 551–52 (D.C.Cir.2002). This has been fulfilled. The complaint describes the time period during which the allegedly fraudulent acts were perpetrated, the identities of various parties involved, the specific schemes employed, and the inflated reimbursement claims and cost reports that resulted.

B. Milestone's Liability for False Claims

1. Milestone's Benefit

■ Milestone argues that it cannot be held liable for North Monroe's fraud because it did not benefit from the fraud. In fact, it argues, it had an incentive to seek the transfer of patients *before* they were ready for transfer, because it is reimbursed on a cost basis, *i.e.,* for the actual cost of treating the patient. Therefore, the earlier a patient is transferred, the greater Milestone's reimbursement.

Milestone seizes on a misunderstanding of the Medicare system cited in the complaint to argue for its dismissal from the

suit. Relator's complaint restates a theory of an HCA case manager that Milestone stood to benefit from increasing the length of a patient's hospital stay because if the patient reached the geometric mean length of stay both the transferring and the receiving hospital would receive full DRG reimbursement. First Amend. Compl. ¶ 19(d). This statement was probably derived from the speaker's understanding of the rule regarding transfer between facilities reimbursed under the DRG system. In the case of transfer between hospitals, the discharging hospital receives the entire DRG reimbursement, and the transferring hospital is reimbursed on a per diem basis (not to exceed the entire DRG). 63 Fed. Reg. at 40,974. Under this system, if a patient stays at the transferring hospital long enough, the per diem will reach the full DRG amount, and both hospitals will receive full payment. However, Milestone is not a DRG provider, and the patient's previous length of stay does not affect its reimbursement. *Id.* at 40,983. Thus, the case manager's statement supplying Milestone's motivation for participating in the scheme is incorrect.

That Milestone did not gain from the scheme in this way does not negate Milestone's alleged participation in and respon-sibility for the fraud, however. The complaint adequately implicates Milestone by naming specific Milestone employees who facilitated and participated in the scheme to retain patients in the hospital past their recommended discharge date. That Milestone did not benefit from the scheme in the manner theorized by the quoted North Monroe employee is irrelevant.[1]

First, Milestone's argument fails because a plaintiff need not plead his legal theory of fraud in the complaint; the complaint must plead only the facts that form the basis for the fraud. *See Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 523 (7th Cir.1993) ("Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent."). Relator has done so, as discussed above. Any theory as to how Milestone may have benefitted from the fraud is not a fact required for 9(b) particularity.

Second, a corporation is liable under the FCA for the fraudulent acts of its agents even if the corporation received no benefit from its fraud.[2] *United States v. O'Connell,* 890 F.2d 563, 569 (1st Cir. 1989).[3] Milestone seizes on a sentence in

---

1. That Milestone did not receive increased Medicare compensation in the manner described does not, of course, mean that it received no benefit from the scheme.

2. The Court is aware of Fifth Circuit precedent that the fraudulent acts of an employee will be attributed to a corporation for FCA purposes only if the employee (1) was acting in the scope of employment, (2) to benefit the corporation. *United States v. Ridglea State Bank,* 357 F.2d 495 (5th Cir.1966). However, *Ridglea* was decided under an earlier version of the FCA which required that a violation be committed "knowingly," *id.* at 496 n. 1, a level of intent akin to that required in criminal law. *Ridglea* adopted the criminal law standard for determining when an employee's acts would be attributed to an employer, and

it was from this criminal law standard that the court drew the benefit-to-the-corporation requirement. *Id.* at 499. Congress's 1986 amendment to the FCA defined "knowingly" as including actual knowledge, deliberate ignorance, or reckless disregard. *See* 31 U.S.C. § 3729(b), added by False Claims Amendment Act of 1986, Pub.L. 99–562 § 2(b), 100 Stat. 3153 (1986). This amendment decreased the level of scienter required for a violation of the FCA and obviated the concerns about attributing the heightened level of intent of an employee to an employer that had prompted the *Ridglea* decision.

3. The Court notes that requiring no actual gain on the part of the defendant parallels FCA precedent that the government need not have suffered an actual loss to recover under

*United States ex rel. Joseph v. Cannon,* 642 F.2d 1373 (D.C.Cir.1981) as creating a requirement that a party defrauding the United States must have received a pecuniary benefit from the fraud. *Joseph* notes that "normally" Rule 9(b) requires a pleader to " 'state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud.'" *Cannon,* 642 F.2d at 1385 (quoting 2A J. Moore, Federal Practice P 9.03, at 9–20 to 9–24 (2d ed.1980)). Rather than establishing an element of an FCA claim, however, this statement draws a general observation from a treatise regarding what particularity under Rule 9(b) "normally" means. This section of Moore's treatise explains pleading practice for Rule 9(b) generally, and is not concerned with the elements of an FCA claim. The current version of the treatise has eliminated the "what was obtained or given up" language, and replaced it with the phrase "the resulting injury." 2 James Wm. Moore et al., Moore's Federal Practice 3d ¶ 9.03(1)(b) (3d ed.1999). This clarifies that the "obtained or given up" refers to the *defrauded* party (the government) rather than the party alleged to have perpetrated the fraud (Milestone). Here the government allegedly paid more Medicare reimbursement than was necessary to treat the patient, and therefore something was "given up" as a consequence of the fraud.

■ Milestone offers the justification for a requirement that a defendant must have gained something from the fraud (and this gain must be alleged in the complaint) that it ensures that a relator has inside knowledge of the alleged fraud. Milestone asserts that Congress created a policy in the FCA that relators *must* be

the FCA. *See United States ex rel. Schwedt v. Planning Research Corp.,* 59 F.3d 196, 199

insiders. This is not the case. It is generally contemplated that an FCA relator will be an insider, and Congress certainly intended to encourage insider whistleblowers to initiate *qui tam* suits. *See, e.g., United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs.,* 149 F.3d 227, 234 (3d Cir.1998). However, the statute contains no such requirement. 31 U.S.C. § 3730. Any person who can muster sufficient evidence of fraud, that is not publicly disclosed, and be the first to file a complaint alleging that fraud, may maintain a *qui tam* suit. In fact, the statute contemplates that a competitor-manifestly not an insider-may file suit. *Id.* § 3730(b)(2)(D) (allowing the exclusion of a relator from direct participation in a suit if it would result in harassment or undue burden to the defendant).

2. Government Participation

■ Milestone made a further complaint the Court will address briefly. After Milestone filed its motion to dismiss [239], the government filed a statement of interest [273]. In its reply [299], Milestone argued that the government could not participate in the motions practice of a case in which it has declined to intervene. While it is the general rule that nonparties may not participate in litigation, the United States is in a peculiar posture in a declined FCA case. The relator is suing in the name of the United States, and the United States will receive the majority of any recovery in the suit. Poor litigation practices by a relator could harm the United States by raising a res judicata bar to a later action by the government or otherwise prejudicing its interests. The D.C. Circuit recently held that the government need not intervene in an FCA case before seeking its dismissal. *Swift v. United States, available in* 318

(D.C.Cir.1995).

F.3d 250 (D.C.Cir.2003). While this decision was based on the statutory language, it affirms the policy recognizing that the United States is a real party in interest to an FCA suit, regardless of whether it has intervened.

The United States limited the scope of its statement to items relevant to preserving its interests. The statement expressly disclaims taking a position on the sufficiency of Relator's complaint. It first requests that any dismissal that may result from the motion be without prejudice to the United States. The second part discusses the purely legal aspect of Milestone's claim that its lack of pecuniary benefit for participation mandates its dismissal from the suit. The statement assists the Court in acting in the broader context of FCA jurisprudence, and does not seek to participate directly in the suit by discussing the merits of Relator's complaint. The United States did not act improperly in submitting a statement carefully crafted to avoid involvement in the factual issues of this declined case and designed solely to protect its interests.

3. "Causes to be presented"

■■■■ Milestone notes that it did not submit claims for Medicare reimbursement for patients' hospitalization in North Monroe. Under the plain language of the False Claims Act, liability attaches to one who "causes to be presented" a false claim. 31 U.S.C. § 3729(a)(1). An argument that the presentation of the claims was the work of another is unavailing as a means to avoid liability under the False Claims Act. *See United States v. Raymond & Whitcomb Co.*, 53 F.Supp.2d 436, 445 (S.D.N.Y.1999) (submission of a false claim by a participant in a venture extends that false claim to all parties). The False Claims Act extends beyond the person making a false claim to " 'one who engages in a fraudulent course of conduct' " that induces payment by the government. *Id.*

(quoting *United States v. Incorp. Village of Island Park*, 888 F.Supp. 419, 439 (S.D.N.Y.1995)).

This is not to say that Milestone will automatically be held liable if Relator's allegations are ultimately proven. The False Claims Act includes a scienter requirement; the violation must have been made "knowingly," which can be proven by actual knowledge, deliberate ignorance, or reckless disregard. 31 U.S.C. § 3729(b); *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C.Cir.2000). When the time comes, the Court will, if necessary, consider whether the "knowingly" portion of the False Claims Act has been satisfied as to Milestone. That is a fact-intensive inquiry, however, and not appropriate to undertake at this time.

III. Conclusion

Milestone's motion to dismiss [167] will be denied. The complaint satisfies the particularity requirement of Rule 9(b). Moreover, it adequately alleges Milestone's role in the scheme. The FCA does not require that a defendant have gained anything as a consequence of the fraud, and it is therefore irrelevant that the speculation of a North Monroe employee as to exactly how Milestone benefitted from the scheme is incorrect. Furthermore, it is permissible for the government to file a statement in a declined case for the limited purpose of preserving the interests of the United States.

A separate order shall issue this day.

### ORDER

This case comes before the Court on defendant Milestone Healthcare's (Milestone) motion to dismiss Relator's First Amended Complaint [239], the United States' statement of interest [273], Relators' response [ ], and Milestone's reply [299].

Upon consideration of the case, the parties' motions and responses, and the law, it is hereby ORDERED that Milestone's motion to dismiss [239] is DENIED.

It is further ORDERED that Milestone's motion to dismiss Relator's Original Complaint [184] is DENIED as moot. After Milestone filed its motion to dismiss, Relator filed a First Amended Complaint. Milestone then filed a motion to dismiss the First Amended Complaint, rendering moot its motion to dismiss the Original Complaint.

SO ORDERED.