# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| *ex rel.* | ) | |
| | ) | |
| WILLIAM SEAN FRENCH, | ) | |
| | ) | |
| Plaintiff-Relator, | ) | C.A. No. N13C-06-289 PRW CCLD |
| | ) | |
| v. | ) | |
| | ) | |
| CARD COMPLIANT, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: January 16, 2018
Decided:  April 30, 2018
Withdrawn and Reissued with Clarifications:  August 29, 2018

## MEMORANDUM OPINION AND ORDER
*Upon Defendants' Motion for Summary Judgment,*
**DENIED**.

Thomas E. Brown, Esquire, Edward K. Black, Esquire (argued), Stephen G. MacDonald, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware, Attorneys for the State of Delaware.

Stuart M. Grant, Esquire, Mary S. Thomas, Esquire (argued), Laina M. Herbert, Esquire, Vivek Upadhya, Esquire, Grant & Eisenhofer P.A., Wilmington, Delaware, Attorneys for Plaintiff-Relator William Sean French.

Kenneth J. Nachbar, Esquire, Michael Houghton, Esquire, Matthew R. Clark, Esquire, Barnaby Grzaslewicz, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, Ethan D. Millar, Esquire, Of Counsel (*pro hac vice*), J. Andrew Howard, Esquire, Of Counsel (*pro hac vice*), Alston & Bird LLP, Los Angeles, CA,

William R. Mitchelson, Jr., Esquire, Of Counsel (*pro hac vice*)(argued), Jason D. Popp, Esquire, Of Counsel (*pro hac vice*), Alston & Bird LLP, Atlanta, GA, Attorneys for Defendants Apple American Group LLC, CBC Restaurant Corp., Il Fornaio (America) Corporation, Noodles & Company, and Shutterfly, Inc.

Stephen E. Jenkins, Esquire, Catherine A. Gaul, Esquire, Ashby & Geddes, Wilmington, Delaware, Richard M. Zuckerman, Esquire, Of Counsel (*pro hac vice*)(argued), Sean Cenawood, Esquire, Of Counsel (*pro hac vice*), Kiran Patel, Esquire, Of Counsel (*pro hac vice*), Catharine Luo, Esquire, Of Counsel (*pro hac vice*), Dentons US LLP, New York, NY, Attorneys for Defendants Card Compliant, LLC, Cardfact II, Inc., Cardfact III, Inc., Cardfact IV, Inc., Cardfact V, Inc., Cardfact VII, Inc., Cardfact VIII, Inc., Cardfact IX, Inc., Cardfact XI, Inc., Cardfact XIV, Inc., Cardfact XV, Inc., Cardfact XVII, Inc., Cardfact XVIII, Inc., Cardfact XXX, Inc., CARDCO CXVI, Inc., and CARDCO CCCIII, Inc.

Colm F. Connolly, Esquire, Jody C. Barillare, Esquire, Morgan, Lewis & Bockius LLP, Wilmington, Delaware, Gregory T. Parks, Esquire, Of Counsel (*pro hac vice*), Ezra D. Church, Esquire, Of Counsel (*pro hac vice*), Courtney McCormick, Esquire, Of Counsel (*pro hac vice*), Morgan Lewis & Bockius LLP, Philadelphia, PA, Attorneys for Defendants Hanna Anderson, LLC, Nash-Finch Company, Pamida Stores Operating Co., LLC and Shopko Stores Operating Co., LLC.

David S. Eagle, Esquire, Michael W. Yurkewicz, Esquire, Klehr, Harrison Harvey Branzburg LLP, Wilmington, Delaware, Martin I. Einstein, Esquire, Of Counsel (*pro hac vice*), David Swetnam-Burland, Esquire, Of Counsel (*pro hac vice*), Stacy O. Stitham, Esquire, Of Counsel (*pro hac vice*), Brann & Isaacson, Lewiston, ME, Attorneys for Defendant Overstock.com, Inc.

Brian M. Rostocki, Esquire, Benjamin P. Chapple, Esquire, Reed Smith LLP, Wilmington, Delaware, Michael J. Wynne, Esquire, Of Counsel (*pro hac vice*), David A. Rammelt, Esquire, Of Counsel (*pro hac vice*), Reed Smith LLP, Chicago, IL, Attorneys for Defendant Einstein Noah Restaurant Group, Inc.

Brian E. Farnan, Esquire, Farnan LLP, Wilmington, Delaware, Shawn J. Organ, Esquire, Of Counsel (*pro hac vice*), Joshua M. Feasel, Esquire, Of Counsel (*pro hac vice*), Organ Cole LLP, Columbus, OH, Attorneys for Defendant Vacation Properties United Ltd.

**WALLACE, J.**

## I. INTRODUCTION[1]

Plaintiff-Relator William Sean French ("French") and the State of Delaware (the "State" or "Delaware," and together with French, the "Plaintiffs") brought this action pursuant to Delaware's False Claims and Reporting Act ("DFCRA") alleging that CardFact, Ltd. ("CardFact"), its successor-in-interest Card Compliant LLC ("Card Compliant"), and the Retailers[2] entered into a contractual scheme designed to deprive Delaware of hundreds of millions of dollars to which it was lawfully entitled under Delaware's Abandoned and Unclaimed Property Law ("DUPL" or the "Escheat Law").[3] The abandoned property at issue in this case are the unredeemed

---

[1] The parties to and the subject of this *qui tam* action have been set forth in the Court's prior opinions and orders and will not now be fully recounted. *See, e.g., State ex rel. French v. Card Compliant LLC, et. al.,* 2015 WL 11051006 (Del. Super. Ct. Nov. 23, 2015) ("*Card Compliant I*"); *State ex rel. French v. Card Compliant LLC, et. al.,* 2017 WL 1483523 (Del. Super. Ct. Apr. 21, 2017) ("*Card Compliant II*"). The Court will instead concentrate here on the factual and procedural background necessary to the resolution of this discrete summary judgment motion.

[2] The remaining defendants in this case fall into three groups: (1) CardFact, including Card Compliant and the fifteen non-Delaware legal corporations created by and affiliated with CardFact and Card Compliant, hereinafter collectively referred to as "the Card Companies"); (2) twelve Delaware-incorporated retailers that entered into Card Services Agreements ("CSAs") with the Card Companies including: (i) Apple American Group, LLC ("AAG"); (ii) CBC Restaurant Corp. ("CBC"); (iii) Einstein Noah Restaurant Group, Inc. ("ENRG"); (iv) Hanna Andersson, LLC ("Hanna Andersson"); (v) Il Fornaio (America) Corporation ("Il Fornaio"); (vi) Nash-Finch Company ("Nash-Finch"); (vii) Noodles & Company ("Noodles"); (viii) Overstock.com, Inc. ("Overstock"); (ix) Pamida Stores Operating Co., LLC ("Pamida"); (x) Shopko Stores Operating Co., LLC ("Shopko"); (xi) Shutterfly, Inc. ("Shutterfly"); and (xii) Skip Barber Racng School, LLC ("Skip Barber"), (i) to (xii) of which are collectively referred to herein as the "Retailers"; and (3) Vacation Properties United Ltd., formerly known as CardFact, Ltd. ("Vacation Properties"). The Card Companies, the Retailers and Vacation Properties are collectively referred to herein as the "Defendants." This action has been stayed with respect to Skip Barber due to its bankruptcy filing.

[3] *See* Compl. ¶ 1, *State ex rel. French v. Card Compliant LLC,* C.A. No. N13C–06–289

balances of gift cards issued by the Retailers to its customers for goods and services at their respective places of business.

Under DUPL's Sections 1199 and 1201, "holders"[4] of abandoned property must file a report of such property with the State and must pay or deliver to the State Escheator all property specified in that report. Plaintiffs assert that Defendants knowingly and intentionally attempted to circumvent this requirement with respect to gift cards by creating "shell" companies in jurisdictions like Ohio and Florida where unredeemed balances on gift cards are not subject to state escheat. A Card Company and a Retailer would then "issue" gift cards from the non-Delaware entity or contractually assign the Retailer's existing obligations to its creditors (*i.e.*, cardholding retail customers) to a "shell" company pursuant to a Card Services Agreement ("CSA") so that the Retailer "ceased" to be the "holder" of the obligation. Plaintiffs contend that such a CSA was a sham because the property was never in fact transferred to the "shell" company and the parties otherwise failed to adhere to the CSA's other terms.[5]

---

PRW CCLD (Del. Super. Ct. June 28, 2013) (D.I. 1); DEL. CODE ANN. tit. 6, §§ 1201–1211 (2012) (Delaware False Claims and Reporting Act) [hereinafter "DFCRA"]; DEL. CODE ANN. tit. 12, §§ 1130–1190 (2012) (Delaware's Unclaimed Property Law) [hereinafter "DUPL"].

[4] Under Section § 1198(7) of DUPL, "holder" means "any person having possession, custody or control of the property of another person . . . ."

[5] The "shell" companies to which Plaintiffs refer to in their pleadings are the non-Delaware Card Companies and are commonly referred to in the abandoned property industry as "giftcos." Under "giftco" planning structures, a Delaware-incorporated retailer forms a subsidiary single-

Defendants argue that the assignments to the non-Delaware entities were valid and enforceable and therefore the Retailers had no obligation to pay the value of the unredeemed gift cards to Delaware under DUPL. Nor, they say, could their actions constitute fraud under the DFCRA since their view of their obligations was "objectively reasonable" as Delaware had issued no authoritative guidance to the contrary. Defendants further claim that the reasonableness of their position is bolstered by the fact that Delaware consistently approved such gift card structures in audits and voluntary disclosure agreement ("VDA") proceedings with the Delaware Department of Finance.

At the conclusion of factual discovery, remaining Defendants collectively brought this Motion for Summary Judgment (the "Motion") seeking the dismissal of all claims. For the reasons set forth herein, that Motion is **DENIED**.

## II.  PROCEDURAL HISTORY

In June 2013, French filed a *qui tam* complaint asserting claims against the Defendants under §§ 1201(a)(4) and (a)(7) of the DFCRA. Within a month, Delaware moved to intervene. The Court granted the State's motion and the complaint was unsealed. The case was then removed to federal court. There, Defendants moved to dismiss. But before that motion was addressed, the case was

---

purpose entity—a "giftco"—to issue its gift cards and to bear any liabilities associated with the cards. That retailer's giftco is domiciled in some state that exempts gift card liabilities from escheat. The retailer then contracts its giftco to sell and redeem its gift cards.

-3-

sent back to this Court. Defendants were granted leave to refile their motion to dismiss here. In 2015, Defendants' dismissal motion was granted, in part, and denied, in part, by a predecessor judge of this Court.[6]

In 2016, five Defendants moved to dismiss or, in the alternative, for summary judgment alleging that the Court lacked subject matter jurisdiction due to the administrative proceedings bar found in 6 *Del. C.* §1206(b).[7] After the voluntary dismissal of two of the moving Defendants, the Court, last year, granted summary judgment for the remaining three.[8]

The now-remaining Defendants filed this joint Motion for Summary Judgment. The Court has heard argument and allowed supplemental briefing thereon.

---

[6]     In *Card Compliant I*, Defendants' Motion to Dismiss was granted with respect to all claims asserted under 6 *Del. C.* § 1201(a)(4), but denied with respect to all claims asserted under 6 *Del. C.* § 1201(a)(7).

[7]     All parties agreed that the version of the DFCRA's Administrative Proceedings Bar extant from June 30, 2000, to July 23, 2013, was applicable here. Six *Del. C.* § 1206(b) then provided that "[i]n no event may a party bring an action under this chapter which is substantially based upon allegations or transactions which are the subject of a civil suit or an administrative proceeding in which the Government is already a party." DEL. CODE ANN. tit. 6, § 1206(b) (2012).

[8]     In *Card Compliant II,* the Court dismissed claims against Ralph Lauren Corp., Ruth's Hospitality Group, Inc. and Shell Oil Co. On August 16, 2017, Ulta Salon, Cosmetics & Fragrance, Inc. was voluntarily dismissed from the case.

## III. FACTUAL BACKGROUND

CardFact was formed in the State of Ohio in 2003. French is a resident of Columbus, Ohio, a former employee of CardFact and the brother-in-law of CardFact's founder, Ted Ziegler ("Ziegler"). CardFact's principle business was providing card services to companies incorporated in Delaware and other states that require that the unredeemed value of gift cards escheat to the state.[9] In order to entice the Retailers to enter into the CSAs with the Card Companies, CardFact and Card Compliant promised the Retailers in its marketing materials that they would not have to change anything about the way the Retailers were running their gift card programs. Under Defendants' giftco structure, the Retailers would continue to issue and redeem their gift cards and retain the possession, custody and control of the value of the unredeemed gift cards.[10]

After Ziegler sold CardFact to its competitor Card Compliant in 2009, French took a job at Card Compliant, "providing customers with 'legislative updates' regarding escheat law as well as 'educating' Card Compliant clients about the company's 'product portfolio.'"[11] When French left Card Compliant, he provided

---

[9] Compl. ¶ 14.

[10] *See, e.g.,* Exhibits 12, 13 and 14 of Pl.'s Prin. Op. Br. in Supp. of their Mot. for Summ. J. (hereinafter "Pl.'s Prin. Op. Br.").

[11] Defs.' Prin. Op. Br. in Supp. of their Mot. for Summ. J. at 30 (hereinafter "Defs.' Prin. Op. Br.").

his new employer with a list of Card Compliant's clients, including the Retailers named in this case.[12]

At issue in this case are CSAs entered into between the non-Delaware Card Companies and the Delaware-incorporated and/or -organized Retailers.[13] Under the CSAs, the Card Companies began issuing gift cards for the Retailers and were assigned the unredeemed gift card balances that had not yet entered dormancy.[14] Although the terms of the CSAs were revised slightly over the years and modified to accommodate specific Retailers, the CSAs entered into between the Card Companies and the Retailers contain the same fundamental terms. Each CSA states, in relevant part:

- CardFact shall manufacture and deliver, or shall instruct, or may authorize [Client] to directly instruct applicable third-party manufacturers of the Cards to manufacture and deliver, the Cards pursuant to the Orders.

- [Client] agrees to permit CardFact to market the cards in [Client's] stores and otherwise related venues with the consent of the [Client] . . . and CardFact agrees to . . . so market, the Cards . . .

---

[12] *Id.*

[13] Defs.' Prin. Op. Br. at 1.

[14] Generally speaking, under Section § 1198(9)(a) of DUPL, a gift card becomes dormant when, for a period of five years, "an owner has ceased, failed, or neglected to exercise dominion or control over property or to assert a right of ownership or possession or to make presentment and demand for payment and satisfaction . . . ."

- All cards shall clearly state that CardFact is the issuer of the Card . . . .

- During the terms of this Agreement, CardFact shall be liable to the Cardholders for all unredeemed Cards, and obligated to satisfy the debts presented by said Cards. It is the intention of the Parties that CardFact is the holder of any unclaimed property with respect to Cards issued during the Term of this Agreement and any now existing Cards issued prior to the date of this Agreement with respect to which no statutory dormancy period has run.

A fair reading of the record could cause one to question whether the parties complied with any of these foregoing terms.[15]

## IV. STANDARD OF REVIEW

This Court's Civil Rule 56 permits summary judgment upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[17] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[18] The moving party bears the burden of

---

[15] *See, e.g.,* Exhibit 15 of Pls.' Prin. Op. Br. at 74–75

[16] SUPER. CT. CIV. R. 56(c).

[17] *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962).

[18] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. Ct. 1986).

-7-

establishing the non-existence of any material issue of fact; upon such a showing the non-moving party must then establish that a genuine issue of material fact exists.[19]

If the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate.[20] And generally, "trial courts should act . . . with caution in granting summary judgment . . . [and] the trial court may . . . deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."[21]

After the Court issued its initial summary judgment decision on these motions, Defendants sought "reargument" because, in their view, the Court failed to address certain of their legal arguments. But the Court considers Defendants' motion, instead, one asking the Court to clarify its disposition of their remaining mostly superficial and underdeveloped arguments. "A motion for clarification may be granted where the meaning of what the Court has written is unclear."[22] Procedurally, a motion for clarification is treated as a motion for reargument.[23] The Court's review

---

[19]     *Jackson v. Minner*, 2013 WL 4538321, at *1 (Del. Aug. 23, 2013).

[20]     *Cerberus Int'l, Ltd. V. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1150 (Del. 2002).

[21]     *Id.* (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 225 (1986)).

[22]     *New Castle County v. Pike Creek Recreational Services*, 2013 WL 6904387, at *2 (Del. Ch. Dec. 30, 2013) (quoting *Naughty Monkey LLC v. MarineMax Northeast LLC*, 2011 WL 684626, at *1 (Del Ch. Feb. 17, 2011) which was interpreting the Court of Chancery's substantively identical rule governing reargument and clarification motions)).

[23]     SUPER. CT. CIV. R. 59(e); *Pike Creek Recreational Services*, 2013 WL 6904387, at *2.

is "limited to consideration of the record,"[24] meaning the Court may not consider issues raised for the first time in a motion for clarification or reargument.[25] Here, the Court clarifies–via integration with its original opinion–its disposition of the remaining Defendants' pendant arguments as they may affect the looming trial of this case.[26]

## V. DISCUSSION

Defendants collectively assert a number of legal arguments in support of their Motion. In addition, certain Defendants assert individual grounds in support of their Motion. As an initial matter, the Court will address the arguments applicable to all Defendants, followed by one remaining Retailer Defendant's individual argument.[27]

### A. DFCRA's Scienter Requirement Does Not Readily Lend to the Grant of Summary Judgment

Defendants argue that the undisputed facts demonstrate that the Retailers had no legal obligation to pay the unredeemed balances on gift cards issued by and

---

[24] *Pike Creek Recreational Services*, 2013 WL 6904387, at *2.

[25] *Pike Creek Recreational Services*, 2013 WL 6904387, at *2.

[26] The Court has been notified that the only remaining Defendant in this case is Retailer Overstock. *See* D.I. 929 (Plaintiffs' notice of agreements to settle all remaining claims against all remaining Defendants but Overstock).

[27] *See* n.26, *supra*.

assigned to the Card Companies and that Plaintiffs cannot, as a matter of law, establish a DFCRA fraud claim.

The DFCRA's Section 1201(a)(7) imposes liability upon anyone who

> knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . .[28]

The statute defines "knowingly" as having "actual knowledge of the information; . . . [acting] in deliberate ignorance of the truth or falsity of the information; or . . . [acting] in reckless disregard of the truth or falsity of the information."[29] It further provides that "no proof of specific intent to defraud is required."[30]

Defendants try to convert the typically "fact-intensive inquiry" required to prove scienter in a false claims action into a legal question capable of resolution at the summary judgment stage.[31] The Court can't do so here. Defendants' subjective

---

[28] DEL. CODE ANN. tit. 6, § 1201(a)(7) (2012). Because French's Complaint was filed on June 28, 2013, the Court here cites the relevant substantive language of this statutory provision that existed from June 30, 2000, to July 23, 2013.

[29] DEL. CODE ANN. tit. 6, § 1202(3) (2012). This definition has not changed since the DFCRA's first enactment in June 30, 2000.

[30] *Id.*

[31] *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014, 1025 (E.D. Mich. (2017) (quoting *United States ex. rel. K&R Ltd. P'Ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 61 (D.D.C. 2006)); *United States ex. rel. McCready v. Columbus/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 120 (D.D.C. 2003) (scienter under the False Claims Act is a "fact-intensive inquiry").

-10-

beliefs on the validity of the giftco structure remain at issue and the record contains numerous disputed factual issues that preclude resolution of Defendants' scienter on summary judgment.[32]

As this Court has observed earlier, case law on the federal False Claims Act, the DFCRA's federal analogue, is informative when interpreting our state false claims statute.[33] And under that federal case law generally, "[t]he issue of whether [a] Defendant[']s[] interpretation . . . negates scienter c[an] not be determined as a pure issue of law" so, instead, a "Relator is entitled to develop evidence of scienter at trial."[34] Courts have been "lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences because such issues are appropriate for resolution by the trier of fact."[35] This Court must decline to supplant

---

[32]     *See, e.g.,* Exhibit A to Pls.' Prin. Op. Br.

[33]     *See Card Compliant II,* 2017 WL 1483523, at *10 (noting that federal decisions on the False Claims Act, "[t]he federal analogue to the DFCRA[,] is informative when deriving the proper definition of 'administrative proceeding' under our statute"); *Card Compliant I,* 2015 WL 11051006, at *6 ("Delaware authority interpreting the DFCRA is scant. Since the DFCRA is modeled after the federal False Claims Act, the court will look to federal case law for guidance.") (internal citations omitted). *See also State ex rel. Higgins v. SourceGas, LLC,* 2012 WL 1721783, at *4 (Del. Super. Ct. May 15, 2012); *State Dep't of Labor – Div. of Unemp't Ins. v. Pasquale,* 2015 WL 5461540, at *3 (Del. Super. Ct. Sept. 17, 2015).

[34]     *United States ex. rel. Colquitt v. Abbott Laboratories, et al,* 2016 WL 3571329, at *2 (N.D. Tex. Mar. 8, 2016); *see also United States ex. rel. Wuestenhoefer v. Jeffereson,* 105 F. Supp. 3d 641, 668 (N.D. Miss. 2015) (denying summary judgment due to a "genuine issue of material fact as to whether [defendants] . . . deliberately chose to remain ignorant" as that showing of "scienter . . . is sufficient for liability under the [False Claims] Act").

[35]     *United States ex. rel. Feldman v. Van Gorp,* 674 F. Supp. 2d 475, 481 (S.D.N.Y. 2009) (quoting *In re DDAVP Direct Antitrust Litig.,* 585 F.3d 677, 693 (2d. Cir. 2009)).

-11-

this case's ultimate trier of fact and must deny summary judgment. The Plaintiffs must be given the opportunity to present to a jury evidence of Defendants' actual knowledge, subjective belief, and purported bad faith.

## B. The *Texas* Trilogy and The Law of this Case

The rules governing the priority to escheat unclaimed intangible property where there are conflicting claims between states were established under federal common law by a series of cases known as the *Texas* trilogy.[36] Under these rules, the Court applies a three-step analysis to these disputes: first, "determin[ing] the precise debtor-creditor relationship as defined by the law that creates the property at issue"; second, identifying whether or not the creditor's address is recorded; and third, "if . . . the debtor's records disclose no address for a creditor . . . award[ing] the right to escheat to the State in which the debtor is incorporated."[37]

Applying these rules in *Card Compliant I*, a predecessor judge in this case determined:

> With respect to Count One, under (a)(7), even if the CSAs
> were not shams, the court must determine the relevant
> debtor [for escheat purposes].

*       *       *

---

[36] *See Texas v. New Jersey*, 379 U.S. 674 (1965); *Pennsylvania v. New York*, 407 U.S. 206 (1972); *Delaware v. New York*, 507 U.S. 490 (1993).

[37] *Delaware*, 507 U.S. at 500.

CardFact and the Retailers cannot contract amongst themselves to avoid the obligations to their customers (or Delaware). The only relationship involving the creditor (the customer) is the one between the creditor and the Retailers, in contrast to the Retailers relationship with CardFact. Because the creditor-Retailer relationship is the relevant relationship, the Delaware-based Retailers are the relevant debtors for escheat purposes. Again, that is true if the Retailers and CardFact have their CSAs.[38]

Plaintiffs asserts that this ruling should stand, because "[s]uch a situation is guided by the doctrine of the law of the case."[39] In turn, Plaintiffs say, the Court should not revisit the predecessor judge's ruling absent the extraordinary circumstances that allow for reconsideration only of decisions that are clearly wrong.[40] Defendants argue that the prior ruling of this Court was based on an incomplete record and the judge assigned to the case at that time did not have the benefit of any of the documents and testimonial evidence from confidential audits and VDAs in which Delaware consistently took the position that when a gift card is assigned before dormancy the Card Company/Non-Delaware Subsidiary is the relevant debtor for escheat purposes.[41] Plaintiffs are correct; the law of the case applies because Defendants have failed to establish that the prior ruling was clearly

---

[38]     *Card Compliant I*, 2015 WL 11051006, at *6.

[39]     Pl.'s Prin. Op. Br. at 57–58.

[40]     Pl.'s Prin. Op. Br. at 57–58.

[41]     Defs.' Prin. Op. Br. at 62.

wrong and that extraordinary circumstances exist so as to permit this Court to second-guess the earlier decision.

Delaware courts consistently "take a dim view of a successor judge in a single case overruling a decision of his predecessor."[42] Such a rule of law promotes "fundamental fairness and . . . judicial efficiency"[43] and ensures that parties are not "entrapped by varying philosophies of different judges of the same Court in the case."[44] But the law of the case doctrine is "not an *absolute* bar to reconsideration of a prior decision that is clearly wrong, produces an injustice or should be revisited because of changed circumstances."[45] The doctrine only applies "provided the facts underlying the ruling do not change."[46]

[42] *Frank G.W. v. Carol M.W.*, 457 A.2d 715, 718 (Del. 1983); *May v. Bigmar, Inc.*, 838 A.2d 285, 288 n.8 (Del. Ch. 2003) ("The 'law of the case' doctrine requires that issues already decided by the same court should be adopted without relitigation, and once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears.") (internal quotation marks omitted).

[43] *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept 23, 1994).; *Frank G.W.*, 457 A.2d at 719 ("Considerations of courtesy and comity are particularly relevant in Delaware where it is not unusual for our Superior Court to have various judges involved at different stages of protracted cases.")

[44] *Frank G.W.*, 457 A.2d at 719.

[45] *Gannett Co., Inc. v. Kanaga*, 750 A.2d 1174, 1181 (Del. 2000) (emphasis in original).

[46] *State v. Wright*, 131 A.3d 310, 321–322 (Del. 2016).

Here, the facts underlying the ruling in *Card Compliant I* have not changed. Defendants continue to assert that the CSAs constitute valid assignments of the Retailers' obligations to the Card Companies and argue that the Retailers were not the relevant "debtors" and consequently were not subject to DUPL.[47] The only "change in circumstance" Defendants point to is the fact that the evidence in the record after discovery shows that in certain nonpublic audits and VDAs Delaware took the position that gift cards assigned before dormancy to a non-Delaware giftco were not subject to DUPL. That's not the type of "extraordinary circumstance[]" where justice demands the revisiting the merits of the parties' claims."[48]

### C. *Marathon Petroleum* Supports a View that Delaware May Look Into (and Past) the Formalities of a Giftco's Structure.

The United States Court of Appeals for the Third Circuit's recent decision in *Marathon Petroleum Corp. v. Sec'y of Finance*[49] further supports a finding that summary judgment is inappropriate here. *Marathon Petroleum* involved the State of Delaware's unclaimed property audit of Marathon Petroleum Corporation ("Marathon") and its Delaware affiliate, Speedway LLC ("Speedway"). Marathon

---

[47]     *Card Compliant I*, 2015 WL 11051006 at *4.

[48]     *Frank G.W.*, 457 A.2d at 719.

[49]     876 F.3d 481 (3d Cir. 2017); *see also Office Depot, Inc. v. Secretary of Finance for Delaware*, 710 Fed. Appx. 59 (2018) (holding that the *Texas* cases do not prevent Delaware from conducting an examination to determine whether a subsidiary company is *bona fide* and the true holder of abandoned property).

-15-

and Speedway had formed Ohio subsidiaries in 2001 and 2002 (the "Ohio Subsidiaries"), respectively, to issue their gift cards. Several years after the audit had commenced, Delaware asked questions about the Ohio Subsidiaries and requested that Marathon and Speedway produce: the articles of incorporation for each of the Ohio Subsidiaries; the governing contracts between each of Marathon and Speedway and the Ohio Subsidiaries; and numerous other related documents. Marathon and Speedway complied with the initial request. But after Delaware requested further documentation, Marathon, Speedway and the Ohio Subsidiaries brought an action in federal district court.

There they claimed that the federal common law rules in *Texas v. New Jersey*[50] barred Delaware from conducting an audit examining whether the funds paid for gift cards issued by the Ohio Subsidiaries were held by Marathon and Speedway and therefore subject to escheatment by Delaware. The district court dismissed the action holding that private parties cannot invoke the *Texas* rules to challenge a state's authority to escheat property.[51]

On appeal, the Third Circuit vacated the district court's decision finding that private parties have standing to invoke the *Texas* rules.[52] And, importantly here, the

---

[50]     379 U.S. 674 (1965).

[51]     *Marathon Petroleum*, 876 F.3d at 487–88.

[52]     *Id.* at 492-96.

-16-

Court then went on to hold that "[t]he *Texas* cases do not prevent Delaware from examining books and records to determine the true holder of abandoned property."[53] In determining that Delaware had the power to look beyond the four corners of the contracts and into the course of conduct between Marathon, Speedway and the Ohio Subsidiaries, the Third Circuit explained that

> [t]he *Texas* trilogy does not stand for the proposition that states must ignore anything beyond the pages of the contract. "[D]etermining the precise debtor-creditor relationship," [], may at times be a fact-based inquiry into whether the formalities of corporate separateness have been observed, not just in theory but in practice. . . . We do not read the *Texas* trilogy as foreclosing a state's right to conduct an appropriate examination to determine if there is fraud or another basis for determining that property may be escheated, even if a contract viewed in isolation might suggest otherwise.[54]

Earlier in this case, corporate Defendants sought refuge through application of the DFCRA's Administrative Proceedings Bar.[55] Then their position was that if Delaware had previously engaged in the very type of statutory audits (and VDA procedures) the Third Circuit spoke on to examine their giftco activities and escheat obligations, then the Defendants had been subject to the type of "administrative

---

[53]      *Id.* at 499 (citing *Delaware v. New York*, 507 U.S. at 499).

[54]      *Id.* at 500–01 (citations omitted).

[55]      *Card Compliant I*, 2015 WL 11051006 (dismissing Pantry, Inc.); *Card Compliant II*, 2017 WL 1483523 (dismissing others).

proceedings" that would preclude this Court from exercising subject matter jurisdiction over the State's civil suit here.[56] To act as a bar, those prior administrative proceedings must have been "substantially based upon allegations or transactions which are the subject of a civil suit or an administrative proceeding in which the Government is already a party."[57] It would be indeed incongruous if the administrative proceeding meant to discover and enforce a Defendant's true escheat obligation could cover more ground than a *qui tam* suit claiming fraud in the same allegations or transactions.

Plaintiffs here question the course of dealings between the Card Companies and the Retailers and whether the Defendants acted in accordance with the terms of the CSAs, thereby calling into question the underlying debtor-creditor relationship. The record shows that the facts upon which that determination depends remain heavily disputed. As such, summary judgment is inappropriate and must be denied.

### D. Purported Lack of Investigation of the Claims by the State.

Defendants contend that Delaware's DFCRA claim cannot stand because Delaware failed to conduct an investigation before intervening in this action as

---

[56]     *Card Compliant II*, 2017 WL 1483523, at *3; *Card Compliant I*, 2015 WL 11051006, at *4.

[57]     DEL. CODE ANN. tit. 6, § 1206(b) (2012). Again, § 1206(b) has been amended since this suit was first filed. *See* 79 Del. Laws ch. 141, § 1 (2013) (codified at 6 *Del. C.* § 1206 (2013)). But as this was the wording of the Administrative Proceedings Bar extant from June 30, 2000, to July 23, 2013, all parties agree it is this version that applies in this case.

required by 6 *Del. C.* § 1203(b)(2).[58] Delaware argues that Defendants' statement is incorrect and that State's counsel did conduct an investigation into the claims set forth in the Complaint,[59] but "that there were limits to the investigation that the Department of Justice could have undertaken because it was limited by the requirement that the Complaint be kept under seal during the course of its investigation."[60]

In support of their position, Defendants rely heavily on one isolated observation made by the Court in an earlier decision:

> The State is under a statutory obligation to investigate these claims prior to intervening and proceeding with a *qui tam* complaint. The State admits it did not do so. If it had, it would have learned that Ralph Lauren, Ruth's, and Shell were all undergoing administrative proceedings nearly identical to those Pantry Pride, Inc. was subjected to, in which the Court previously found necessitated dismissal of that co-defendant in this very action.[61]

Plaintiffs contend that such reliance is misplaced because the Court's comment was only directed to the scope of the State's inquiry into one paragraph of

---

[58]     DEL. CODE ANN. tit. 6, § 1203(b)(2) (2009) ("Within 60 days after receiving a copy of the complaint, the Department of Justice shall conduct an investigation of the factual allegations and legal contentions made in the complaint.").

[59]     *See*, e.g. State of Del. and Pl-Rel.'s Br. in Opp'n to Ruth's Hospitality Grp, Inc., Mot. to Dismiss, or in the Alternative, Summ. J. at 6-7; *see also* Plaintiffs' contemporaneously filed Opposition Briefs submitted in conjunction with Trans. No. 59739021.

[60]     Pl.'s Prin. Br. at 72.

[61]     *Card Compliant II*, 2017 WL 1483523, at *3 (footnotes omitted).

the Complaint regarding whether there were administrative proceedings pending regarding this action within the meaning of the DFCRA and not to the entirety of the Complaint.[62] Plaintiffs are correct.

The State conducted a substantial and substantive investigation into the allegations prior to intervening. The fact that the State and the Defendants held different views as to what constitutes an administrative proceeding under the DFCRA, which was a matter of first impression before the Court in *Card Compliant II*, is not surprising, nor does it negate the State's efforts to confirm the Complaint's allegations.

Moreover, even assuming that the State had failed to meet DFCRA's statutory investigation requirement, it is within the Court's discretion as to whether it is appropriate to dismiss the case on that basis.[63] In the Court's view, dismissal is not warranted. And dismissal is the only potential relief for such a statutory violation of what is best viewed as a pleading requirement. That alleged failure is neither an issue of fact for jury determination, nor a basis for summary judgment. Rule 56 relief thereon is denied with respect to all remaining Defendants.

---

[62]     Pl.'s Prin. Br. at 74.

[63]     *See State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 137 S. Ct. 436, 444 (2016) (stating that "[i]n general, the question whether dismissal is appropriate should be left to the sound discretion of the district court. . . .")

## E. Gift Cards Sold to Third-Party Intermediaries.

Defendant Overstock argues that because it sold large numbers of gift cards to third-party intermediaries (a.k.a. bulk purchasers) with known addresses outside the State, it is entitled to partial summary judgment with respect to those cards because, after dormancy, the cards are escheatable, if at all, to the states in which the bulk purchasers are located under the *Texas* primary rule, and not to Delaware under the secondary rule articulated in *Texas*.[64] Specifically, Overstock argues that third-party intermediaries that purchased its gift cards are "permitted, but not obligated, to sell or transfer the gift cards they purchase" and that they are "the same as any other purchaser or owner of a gift card."[65] Plaintiffs assert that the third-party intermediaries that acquired Overstock's gift cards are in the business of reselling gift cards to retail purchasers for a profit (in the case of an intermediary like Blackhawk) or utilizing them as part of an incentive or rewards program (in the case of a company like Incentco) making them quite different than other purchasers since their business reality makes it virtually certain the intermediaries will resell the gift cards under pain of financial loss.[66] And so, according to Plaintiffs, such

---

[64] *Texas v. New Jersey*, 370 U.S. 674 (1965).

[65] Defs.' Suppl. Op. Br. at 52.

[66] Pls. Supp. Br. at 58. Moreover, in the case of Shutterfly, certain contracts with third-party intermediaries require the reseller to use commercial best efforts to sell its gift cards. *Id.*

-21-

intermediaries are not the "owners" of the cards for purposes of determining which state has the right of escheatment.

As previously discussed, the U.S. Supreme Court's decision in *Texas v. New Jersey* and its progeny sets forth a three-step analysis for determining which state has the right to escheat abandoned intangible personal property among competing states.[67]

> First, we must determine the precise debtor-creditor relationship as defined by the law that creates the property at issue. Second, because the property interest in any debt belongs to the creditor rather than the debtor, the primary rule gives the first opportunity to escheat to the State of the creditor's last known address as shown by the debtor's books and records. Finally, if the primary rule fails because the debtor's records disclose no address for a creditor or because the creditor's last known address is in a State whose laws do not provide for escheat, the secondary rule awards the right to escheat to the State in which the debtor is incorporated.[68]

In *Delaware*, the third decision of the *Texas* trilogy, the U.S. Supreme Court made clear that it had "not relied on legal definitions of 'creditor' and 'debtor' merely for descriptive convenience. Rather, [the Court] grounded the concepts of 'creditor' and 'debtor' in the positive law that gives rise to the property at issue."[69]

---

[67]    *See Texas v. New Jersey*, 370 U.S. 674 (1965); *Pennsylvania v. New York*, 407 U.S. 206 (1972); *Delaware v. New York*, 507 U.S. 490 (1993).

[68]    *Delaware*, 507 U.S. at 499-500 (internal quotes and citations omitted).

[69]    *Delaware*, 507 U.S. at 501.

The Court went on to explain that an "examination of the holder's legal obligations not only defined the escheatable property at issue but also carefully identified the relevant 'debtors' and 'creditors.'[70] Based on these rules, Overstock's position is founded on the notion that the third-party intermediaries are the "creditors" to whom the debtors (i.e. Retailers) owe the contractual obligation to produce goods and services in exchange for the gift cards. But that is just not consistent with what was happening here.

Overstock relies on *Nellius v. Tampax*,[71] a 1978 Delaware Chancery Court case, and *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*,[72] a 2012 Third Circuit case, in support of its position. But neither case is dispositive. In *Nellius*, the Delaware's Escheator brought a cause of action against Tampax, Incorporated, a Delaware corporation, alleging that the corporation was the holder of certain stock, stock dividends and cash dividends which were subject to escheat by the State.[73] The original holder of the 200 shares of stock in question that yielded the dividends were issued to a resident of Massachusetts as recorded on the corporation's stock

---

[70]     *Delaware*, 507 U.S. at 503.

[71]     394 A.2d 233 (Del. Ch. 1978).

[72]     669 F.3d 374 (3d Cir. 2012).

[73]     *Nellius*, 394 A.2d 233, 234.

ledger.[74] The original holder sold his stock sometime thereafter, but the transfer was never recorded on the corporation's books and records.[75] For several years after the sale, the corporation sent dividend checks to the original record holder and on each occasion the original holder sent back the check with a notation disclaiming ownership of the shares.[76] After several rejections, the corporation stopped forwarding the dividends to the record holder, but continued to hold and accumulate the dividends and stock splits in the name of the original record holder.[77]

In bringing the cause of action, the Escheator took the position that the address of the owner of the abandoned property was unknown giving Delaware the right to escheat the property under the secondary rule in *Texas*.[78] The Court of Chancery disagreed and held that the state of the last known address of the creditor as shown on the debtor's books and records (i.e. Massachusetts) had the right to escheat the stock and dividends despite the record holder disavowing ownership thereof and dismissed the action brought by Delaware for lack of standing.[79]

---

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* Over time, the original 200 shares grew to a total of 7,200 shares and cash dividends of $145,072. *Id.* at 234-35.

[78] *Id.* at 236.

[79] *Id.* at 236.

*Nellius* is simply different than what has happened (and is happening) with Overstock gift cards. In *Nellius*, the corporation (*i.e.*, the debtor) had incorrect owner information on its books and records as opposed to no owner information at all (as the State Escheator had argued). The Court of Chancery's *Nellius* decision is consistent with the primacy in which the stock ledger is held under Delaware corporate law.[80] Had there actually been no record holder information at all with respect to the shares at issue in *Nellius*, the decision would likely have been different.

In *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, the issuers of gift cards brought a cause of action challenging certain amendments to New Jersey's unclaimed property laws regarding escheatment of gift cards. The issuers argued, among other things, that a provision of the New Jersey statute requiring the issuers to obtain the name and address of the purchaser or owner of each gift card sold (and, at a minimum the zip code of the purchaser or owner, collectively referred to by the Court as the "data collection provision") was preempted by federal common law because it did "not further the *Texas* priority scheme."[81] The issuers argued that the

---

[80]     *See e.g. Shaw v. Agri-Mark, Inc.* 663 A.2d 464 (Del. 1995) (holding that the corporation may look to its stock ledger as the sole evidence in identifying those shareholders of record who are entitled to inspection under Section 220 of the General Corporation Law); *In Re Giant Portland Cement Co.*, 21 A.2d 697 (Del. Ch. 1941) (holding that as far as the corporation is concerned, the record owner must be regarded as the real owner of the stock, with the consequent right to vote such stock by proxy or otherwise).

[81]     *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 397 (3d Cir. 2012).

statute's data collection provision did little to reunite abandoned property with its actual owner, who was most often the recipient of the gift card.[82] When rejecting this argument, the Third Circuit cited the *Texas* trilogy noting that "either the purchaser or recipient of the gift card may redeem the gift card because either can be considered the creditor" and reiterating that the United States Supreme Court "has consistently permitted states to escheat based on the last known address of the purchaser."[83]

Plaintiffs assert that the *N.J. Retail Merchants Ass'n* holding that either the gift card's purchaser or recipient may be the "creditor" is of no moment here because the Court of Appeals never considered the type of intermediaries used by Overstock.[84] Plaintiffs are right.

---

[82]     *Id.*

[83]     *Id.* (internal citations omitted).

[84]     Pls. Supp. Br. at 61. Nor has the United States Supreme Court. The type of intermediary considered by the Supreme Court in *Pennsylvania v. New York*, 407 U.S. 206 (1972) was Western Union Company, which held proceeds left unclaimed because the company was not able to locate the payee of a money order or to make a refund to the sender. In such a circumstance, the Supreme Court found that "either a payee or a sender" may redeem a money order because either can be considered a creditor. *Id.* at 213. Likewise, the type of intermediaries considered by the Supreme Court in *Delaware v. New York*, 507 U.S. 490 (1993), were financial intermediaries such as banks, brokers and depositories that held unclaimed dividends and other distributions made by securities' issuers for their beneficial owners. These financial intermediaries were the "record owners" of the stock and fully entitled to receive the distributions based on those securities. *Id.* at 495. The Supreme Court found that these financial intermediaries that held the unclaimed property in their own names were the relevant "debtors" under the secondary rule in *Texas* because an intermediary serving as a record owner is the "debtor" insofar as it has contractual duties to transmit distributions to the beneficial owner and that issuers can no longer be considered "debtors" once they pay dividends and distributions to the record owners. *Id.* at 504.

While Overstock claims that sales of its gift cards to intermediaries are the same as any other sale of gift cards to retail purchasers and are recorded as such on their respective books and records,[85] the record also reveals that the sales of Overstock's gift cards to certain intermediaries (such as Blackhawk)[86] are not the functional equivalent of sales to end-use consumers. Gift cards that are purportedly sold to intermediaries like Blackhawk are not activated nor are they assigned any monetary value at the time of sale to that intermediary.[87] Rather, the gift cards are activated at the time when a retail customer takes it to a store register for activation and purchase.[88] As one witness testified, "any time before that, it's just a piece of plastic."[89] That witness explained: "[w]e pay Blackhawk a fee for gift cards that we sell at third-party retailers."[90] In turn, there is hardly a record supporting the notion that Overstock is entitled to judgment as a matter of law. Instead, the weight of the evidence suggests far more strongly that those of Overstock's intermediaries are

---

[85]     Defs.' Suppl. Op. Br. at 53.

[86]     According to one witness, "Blackhawk is a well-connected third-party distributor. Essentially they allow us [i.e. Overstock] to put our cards in thousands of physical locations and thousands of digital locations. Essentially they're a middle man. . . ." *See* Ex. 59 to Pls. Supp. Br. at 109.

[87]     Pls. Supp. Br. at 59.

[88]     Pls. Supp. Br. at 59.

[89]     Pls. Supp. Br. at 59.

[90]     Ex. 7 to Pls. Supp. Br. at 41.

neither "creditors" nor the gift cards' "owners" at all; they are, rather, just a conduit for sales to retail purchasers and consumers.

The record reveals also that other bulk purchasers of gift cards may purchase gift cards outright and then use the gift cards as incentives for its customers (like Discover card)[91] or operate businesses that utilize gift cards as rewards or incentives for employees or customers (like Incento).[92] Despite the purported purchase of such gift cards by these types of third-party intermediaries, nothing in the record indicates that such bulk purchasers remain the holders of such cards through dormancy. Rather, the gift cards are routinely transferred to customers or employees who are the "creditors" as contemplated by *Texas*. Therefore, summary judgment in Overstock's favor is equally inappropriate with respect to those transactions.

## VI.  CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

---

[91]  Ex. 7 to Pls. Supp. Br. at 44.

[92]  *See* Ex. 59 to Pls. Supp. Br. at 112-13 ("So, Incento, . . . so essentially they run a site that is a private site with a – I believe they're a rewards program for their just specific companies that can access the site, so you work at the company and you do some good things, you get some reward benefit that you can go redeem for a gift card on their site.").